LUELLEN *v.* NEW YORK LIFE INSURANCE CO.

1. INSURANCE—LIFE INSURANCE—TONTINE POLICY—SURPLUS.

> Where insurance policies are tontine in character, statements as to the prospective surplus or profits will be regarded by the courts as estimates rather than definite promises to pay a fixed amount, and while this does not prevent insurer and insured from contracting for insurance in a definite amount, it does prevent the turning of a tontine policy into one for a fixed sum in case the surplus does not reach expectations.

2. SAME—CONTRACT—AUTHORITY OF AGENT TO CHANGE TERMS OF POLICY.

> Where defendant insurance company's agent sent insured a letter with his policy containing a statement of a definite amount as the surplus of the policy at the end of the tontine period, *held*, that the terms of the policy could not be changed by the agent, the record affirmatively showing that he had no such authority.

Error to Washtenaw; Kinne, J. Submitted April 18, 1918. (Docket No. 61.) Decided June 3, 1918.

Assumpsit by Fannie Luellen and another against the New York Life Insurance Company on a policy of insurance. Judgment for plaintiffs on a directed verdict. Defendant brings error. Reversed, and remanded with instructions.

*Thomas A. E. Weadock* (*James H. McIntosh,* of counsel), for appellant.

*John P. Kirk,* for appellees.

On May 11, 1897, defendant, a mutual life insurance company, executed at its New York office a policy of insurance upon the life of Albert G. Denmark, on the 20 payment life, 20 year accumulation plan, to which policy was attached the application therefor. It was

one of 16 policies issued by defendant during that year on the same plan to men of the same age as Mr. Denmark. The application contained, among others, the following clause:

"That in any distribution of surplus or apportionment of dividend, the principles and methods which may be adopted by the company for such distribution or apportionment, and its determination of the amount equitably belonging to any policy which may be issued under this application, shall be and are hereby ratified and accepted."

The policy itself contained the following:

"No agent has power in behalf of the company to make or modify this or any contract of insurance, to extend the time for paying any premium, to waive any forfeiture, or to bind the company by making any promise or making or receiving any representation or information. These powers can be exercised only by the president, vice-president, second vice-president, actuary or secretary of the company, and will not be delegated. * * *

"The company guarantees that the entire cash value of this policy at the end of the accumulation period shall be thirteen hundred twenty dollars, and in addition the cash dividend then apportioned by the company.

"At the end of the accumulation period, the company will send the insured a written statement, setting forth the results under each of the above accumulation benefits."

The policy also contained an option to the insured to select and receive one of six accumulation benefits, the fifth of which was to receive the cash value and discontinue the policy. Mr. Denmark was then living at Big Springs, Texas, and the insurance was solicited by and procured through one E. J. Hadlock, an agent of defendant. While Mr. Denmark only knew what Hadlock told him as to his agency, the defendant admitted that he was its agent and produced the contract of

agency.   This contract contained the following provision:

"It is agreed that said party of the second part shall have no authority on behalf of said party of the first part to make, alter or discharge any contract, to waive forfeitures, to extend the time of payment of any premium, or to waive payment in cash, or to receive any money due or to become due to said party of the first part, except on applications obtained by or through him in exchange for conditional receipts to be furnished by said party of the first part, or on policies or renewal receipts (signed by the president, vice-president or actuary) sent to him for collection."

The agent sent to Mr. Denmark the policy of insurance accompanied by the following letter:

"No. 2,521

"C. F. Morehead,      Joseph Magoff,      K. C. Lackland,
"President.      Vice-President.      Cashier.
"State National Bank.
"United States Depository.
"EL PASO, TEXAS, May 20, 1897.

"Mr. A. G. DENMARK:

*"Dear Sir:* Enclosed please find your policy, the best policy that is written, just as I explained to you.   Now if you die within twenty years your estate will receive all back that you have paid on the policy and $2,000 added to it; if you live to the end of twenty years, you will receive your choice of six benefits:

"The first, $2,000 paid-up insurance and $110 annual income.

"The second, paid-up insurance, $3,478.

"The third, $2,000 paid-up insurance and dividend in cash, $1,314.

"The fourth, $1,320 paid-up insurance and $1,314 dividend in cash, and $39.60 a year.

"The fifth, cash value, $1,320, and dividend in cash, $1,314; $2,634.

"The sixth, annual income for life of $260.
"I am yours,
"E. J. HADLOCK."

Thereafter, during the 20 year period Mr. Denmark paid the annual premiums as they fell due.   He had

borrowed money from the company so that the amount due on these loans equaled the amount of the reserve guaranteed in said policy. Shortly before the policy matured defendant caused a calculation to be made of the profits and surplus equitably belonging to said policy in accordance with the principles and methods adopted by it for that purpose, and the amount so found was the sum of $746.66. There is no claim of fraud in this calculation, or that it does not correctly state the amount of surplus and profits apportionable to this policy under such principles and methods.

Plaintiffs are the daughters and assignees of Mr. Denmark. Proceeding upon the theory that the letter of Mr. Hadlock was a part of the contract of insurance they elected to accept the fifth option of cash value and asked payment of the sum of $1,314. Defendant tendered the sum of $746.66, which was declined. This suit was thereupon instituted and the said sum of $746.66 was tendered into court. The facts not being in dispute, both parties moved for a directed verdict, plaintiff for the sum of $1,314, with interest, defendant for a verdict for plaintiff for the amount of the tender. Plaintiff's motion was granted and defendant sued out this writ of error.

FELLOWS, J. (*after stating the facts*). This record disclosed and it should be obvious that while an insurance company may calculate its reserve with certainty, its prospective surplus or profits over a future period of years would be contingent upon the happening of so many uncertain events that its amount would be highly problematical. The amount apportionable to a policy of any class would be so dependent upon the number of lapses, the rate of interest its investments would earn, its expense of doing business, its losses, taxes, adverse or favorable legislation, its volume of business, and so many other contingencies as

to take any approximation of such profits into the realm of conjecture, based to a certain extent upon past experience, but always with the uncertainty of the future. Courts have quite uniformly had this situation in mind in considering tontine insurance, or insurance partaking of a tontine character, and have realized and understood that what the future earnings of a company will be is a matter of estimate, rather than mathematical calculation, and that figures of future earnings will generally be treated as estimates rather than specific sums agreed upon in this class of insurance. Thus it was said in *Untermyer* v. *Insurance Co.*, 128 N. Y. App. Div. 615, a case not unlike the present one:

"The whole scheme was essentially speculative and problematical. The amount to be apportioned depended upon the number of survivors, for only those who survived were to participate in the distribution; it depended upon the cost of administration of the business of the company properly apportioned to the policy during the period in which it ran; it depended upon the interest which could be earned on the investment of the premiums paid in during that period. Upon such factors there could be no more than a guess, based upon previous experience, as to the result at the end of the period. The company could promise, as it did promise, to pay a fixed and definite sum upon the death of the insured, because experience had shown the average rate of life of a person at the age of the insured, experience had shown the rate of premium which would protect the company and insure the payment of the amount agreed upon. But when, attached to the definite promise of insurance in a definite sum was given the speculative hope of a participation in problematic savings and earnings to the problematic survivors of a given year of insurers, the proposition upon its face became incapable of accurate solution."

In this case there was given the insured by the agent of the company, upon a blank furnished by the company, an illustration said to be based upon the past

experience of the company as to the cash value of the policy at maturity. The figures were held to be an estimate and not a binding agreement to pay that sum.

In *Langdon* v. *Insurance Co.*, 199 N. Y. 188, the separate paper was headed "special contract." Like the *Untermyer Case* it stated the amount of the prospective surplus; but the court declined to permit recovery on it, holding that the policy controlled, Mr. Justice Hiscock, speaking for the majority of the court, saying:

"Therefore, it seems to me that on this proposition the appellant did not establish his case; that the contract did not on its face purport by guaranteeing a fixed amount of surplus to overthrow the very fundamental principle of tontine insurance that a policyholder at the end of his period should get a cash payment dependent on what had happened during that period to and concerning other associated policyholders, but rather expressed his share to be estimated and dependent on such contingencies, and, therefore, there was no variance between it and the policy in this respect."

In *Keithley* v. *Insurance Co.*, 271 Ill. 584, it was sought to recover, in an action for fraud and deceit, upon the representations that the surplus on the policy, together with the legal reserve, would amount at the end of the period to $6,000. The plaintiff was denied recovery, the court saying:

"The statement that the defendant would pay $6,-000 at the end of twenty years was no more than a promise. The statement that the surplus of the policy, added to the reserve, would amount to $6,000 was no more than a prophecy,—the expression of an expectation. The statement of a thing in the future, to be a fraudulent misrepresentation, must amount to the statement of a fact. The statement that a particular article will bear a certain strain or sustain a certain weight; that a machine will do certain work; that land will produce certain crops, or the like, although future in form, refers to the suitability or capacity of the

article or machine for the proposed purpose, or the character or fertility of the soil or the possession of the attributes which will produce the stated results, and amounts to a statement of an existing fact. The statement here complained of is not of that character."

This court, in the case of *O'Brien* v. *Assurance Society*, 173 Mich. 432, had before it a policy of insurance, tontine in character, to which was attached a separate piece of paper upon which recovery was sought. It was held that the figures in the separate paper constituted an estimate as to the amount of the surplus, and not an agreement to pay the amount therein stated. In that case Mr. Justice STONE, who wrote for the court, pointed out that the cases of *Timlin* v. *Assurance Society*, 141 Wis. 276, and *Equitable Society* v. *Meuth*, 145 Ky. 160, which are relied upon in the instant case, were clearly distinguishable from the case before the court. In one particular the *O'Brien Case* differs from the present case, in that the separate paper was there admittedly issued with authority of the company, while here the company not only denies the authority of the agent to so bind it but also disclaims all knowledge of the paper until it was called to its attention just prior to the institution of suit. The doctrine of the cases discussed is supported in the following cases which are quite like them on the facts: *Williams* v. *Insurance Co.*, 122 Md. 141; *Tourtellotte* v. *Insurance Co.*, 155 Wis. 455; *Truly* v. *Insurance Co.*, 108 Miss. 453; *Kaley* v. *Insurance Co.* Neb.), 166 N. W. 256; *Warren* v. *Insurance Co.*, 198 Mich. 342.

The tendency of these cases is to the effect that when the policy of insurance is tontine, semi-tontine, or tontine in its character, statements as to the prospective surplus or profits will be regarded as estimates, rather than definite promises to pay a fixed amount. This does not prevent insurer and insured from con-

tracting for insurance in a definite amount, but does prevent the turning of a tontine policy into one for a fixed sum in case the surplus does not reach expectations.

But the record discloses not only a want of any testimony showing or tending to show any authority upon the part of the agent Hadlock to change the contract of insurance by the letter he wrote, but it also affirmatively shows that he had no such authority. In *Fisk* v. *Insurance Co.*, 198 Mich. 270, this court, speaking through Mr. Justice BROOKE, said:

"It is elementary that the powers possessed by agents of insurance companies, like those of agents of any other corporations, are not governed by any individual principle, but are to be interpreted in accordance with the general law of agency. A different view may not be applied to a contract of insurance than is applied to other contracts."

In *Quinlan* v. *Insurance Co.*, 133 N. Y. 356, it was said:

"But where the restrictions upon an agent's authority appear in the policy, and there is no evidence tending to show that his powers have been enlarged, there seems to be no good reason why the authority expressed should not be regarded as the measure of his power."

See, also, *Barry & Finan Lumber Co.* v. *Insurance Co.*, 136 Mich. 42; *Porter* v. *Home Friendly Society*, 114 Ga. 937; *Travelers' Ins. Co.* v. *Myers & Co.*, 62 Ohio St. 529.

In the instant case the agent Hadlock was not clothed with either the express or apparent authority to change the policy of insurance issued by the company, or to enlarge the liability of the defendant. That liability was fixed by the contract between the parties, not by the letter written by Mr. Hadlock.

It follows that the judgment must be reversed. The

case will be remanded to the circuit court for the county of Washtenaw with instructions to render judgment for the amount of the tender. The defendant will recover costs of both courts.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.