HARTS v FARMERS INSURANCE EXCHANGE

Docket No. 110683. Argued April 6, 1999 (Calendar No. 5). Decided July 30, 1999.

Gloria and Tyrone Harts brought an action in the Kent Circuit Court against Farmers Insurance Exchange and Gregory Pietrzak, an insurance agent, claiming that the Farmers insurance contract that Mr. Pietrzak sold them was inadequate because it did not include uninsured motorist coverage. The court, Donald A. Johnston, J., granted summary disposition for the defendants, finding that under *Bruner v League General Ins Co*, 164 Mich App 28 (1987), there was no special relationship between the agent and the client, and, thus, the agent had no duty to advise the plaintiffs concerning the adequacy of their coverage. The allegations that Farmers Insurance was negligent likewise were rejected. The Court of Appeals, SAWYER, P.J., and BANDSTRA and E. A. QUINNELL, JJ., affirmed in an unpublished memorandum opinion (Docket No. 193312). The plaintiffs appeal.

In an opinion by Justice TAYLOR, joined by Chief Justice WEAVER, and Justices CORRIGAN and YOUNG, the Supreme Court *held*:

Except under very limited circumstances not present in this case, a licensed insurance agent owes no affirmative duty to advise or counsel an insured about the adequacy or availability of coverage.

1. Under the common law, Mr. Pietrzak had a duty to comply with the various fiduciary obligations he owed to Farmers and to act for its benefit. Moreover, because he was Farmers' agent, he had no common-law duty to advise the plaintiffs. An insurance agent whose principal is the insurance company owes no duty to advise a potential insured about any coverage. The agent's job is to merely present the product of his principal and take such orders as can be secured from those who want to purchase the coverage offered.

2. The Legislature has long distinguished between insurance agents and insurance counselors, with agents being essentially order takers, while insurance counselors function primarily as advisors. However, the general no-duty-to-advise rule, where the agent functions as simply an order taker for an insurer, is subject to

change when an event occurs that alters the nature of the relationship between the agent and the insured, such as where the agent misrepresents the nature or extent of the coverage offered or provided, an ambiguous request is made that requires a clarification, an inquiry is made that may require advice and the agent, although not required, gives advice that is inaccurate, or the agent assumes an additional duty by either express agreement with or promise to the insured.

3. In this case, there is no documentary evidence suggesting that Mr. Pietrzak misrepresented the coverage offered or provided. Further, there is no evidence that Mr. Harts made a request about insurance coverage that might be construed as ambiguous or that would have required clarification. Nor did Mr. Pietrzak expressly agree or promise to advise Mr. Harts about insurance coverage generally or uninsured motorist coverage specifically. Because the plaintiffs have failed to establish the duty element of their negligence claim against Mr. Pietrzak, summary disposition in favor of Mr. Pietrzak was proper. Because they cannot establish liability against Mr. Pietrzak, the agent, they likewise cannot establish vicarious liability against Farmers, the principal. And because Mr. Pietrzak was under no obligation to give advice about uninsured motorist coverage, Farmers cannot be liable for any alleged negligent supervision. Accordingly, summary disposition in favor of Farmers was proper.

Justice CAVANAGH, joined by Justices BRICKLEY and KELLY, concurring, stated that in light of the extensive statutory scheme for qualification, a licensed insurance agent is much more than one who merely presents products and takes orders.

Affirmed.

*James R. Rinck* for plaintiffs-appellants.

*Wheeler, Upham, P.C.* (by *Gary A. Maximiuk* and *Jack L. Hoffman*), for defendants-appellees.

TAYLOR, J. We granted leave in this case to determine whether a licensed insurance agent owes an affirmative duty to advise or counsel an insured about the adequacy or availability of coverage. We hold that, except under very limited circumstances not present in this case, an insurance agent owes no such duty to an insured. We therefore affirm the decision of the

Court of Appeals, which affirmed the trial court's grant of summary disposition in favor of defendants.

## I. FACTS AND PROCEEDINGS

In early 1993, plaintiffs, Tyrone and Gloria Harts owned a Chevrolet Cavalier that was covered by a policy of no-fault automobile insurance they had purchased from defendant Farmers Insurance Exchange, through defendant Gregory Pietrzak, a licensed insurance agent selling insurance exclusively for Farmers. The policy covering the Cavalier did not include optional uninsured motorist coverage.

While driving the Cavalier on February 15, 1993, Mrs. Harts was involved in an automobile accident with an uninsured vehicle. Mrs. Harts was injured, and plaintiffs' six-year-old son was killed. The Harts received from Farmers the personal injury protection benefits due them under the Cavalier policy. They also subsequently obtained a $2 million default judgment against the driver and owner of the uninsured vehicle. However, they have never collected any money on this judgment.

The Harts then filed suit against Mr. Pietrzak and Farmers. They contended that Mr. Pietrzak was negligent in selling them an insurance policy that was inadequate because it did not contain uninsured motorist coverage. They also contended that Farmers was vicariously liable for Mr. Pietrzak's negligence and actively negligent for its own failure to properly supervise Mr. Pietrzak.

The discovery phase of the case revealed the extent of the parties' prior dealings. Beginning in 1989, the Harts had insured a series of six vehicles, including

the Cavalier, with Farmers, first with agent John Straub and then beginning in 1992 with Mr. Pietrzak. During the time that they had insured with Mr. Straub, they had purchased for one of their vehicles, a Buick Century, uninsured motorist coverage. This coverage, however, was canceled by Mrs. Harts when the policy on the Century was reinstated after it had lapsed for nonpayment.

On the applications for coverage with respect to vehicles other than the Century, including the application for the Cavalier that was signed by plaintiffs less than one month before the accident, plaintiffs did not select uninsured motorist coverage on the space provided on the application form. Moreover, the record reflects that, some three months before the accident, Farmers notified plaintiffs about the availability of uninsured motorist coverage. The availability of this coverage was made in a November 7, 1992, renewal notice for one of plaintiffs' vehicles. That notice specifically advised plaintiffs that uninsured motorist coverage was available and that they should contact their agent if interested.

While Mr. Harts had no recollection of any conversations with Mr. Pietrzak concerning the nature or extent of the coverage obtained on the Cavalier, Mr. Harts did recall an earlier conversation in which he discussed "full coverage" for the Century with Mr. Pietrzak. However, Mr. Harts did not at that time request uninsured motorist coverage on the Century even though the Harts had earlier had such coverage on this vehicle. Further, it is noteworthy that yet another conversation concerning "full coverage" occurred when the policy on the Century was trans-

ferred to an Aerostar, and again Mr. Harts made no request for uninsured motorist coverage.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), contending that there was no special relationship between plaintiffs and Mr. Pietrzak as required by *Bruner v League General Ins Co*, 164 Mich App 28; 416 NW2d 318 (1987), and that therefore Mr. Pietrzak did not owe plaintiffs a duty to advise them about uninsured motorist coverage or the adequacy of their coverage.[1] Finding *Bruner* dispositive, the trial court granted the motion in favor of defendants. The Court of Appeals affirmed. This Court granted plaintiffs' application for leave to appeal. 459 Mich 899 (1998).

II. STANDARD OF REVIEW

A motion pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and is subject to de novo review. *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999). In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), the court considers the pleadings, affidavits and other documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the nonmoving party. *Id.* The motion is properly granted if the documentary evidence presented shows that there is no genuine issue with

---

[1] In *Bruner*, the Court of Appeals stated that an insurance agent generally does not have a duty to advise an insured about the adequacy of a policy's coverage, but that such a duty may arise where a special relationship exists between the agent and the insured. *Id.* at 31-32. The *Bruner* Court stated that a special relationship was not simply a standard agent-client relationship, but rather was a longstanding relationship with interaction on the question of coverage and detrimental reliance by the insured on the agent's expertise. *Id.* at 34.

respect to any material fact and the moving party is therefore entitled to judgment as a matter of law. *Id.*

### III. ANALYSIS

On appeal, plaintiffs acknowledge that no special relationship as required by *Bruner* exists in this case. However, they contend that this Court should reject *Bruner*'s requirement of a special relationship and allow them to sue Mr. Pietrzak for his negligence in failing to offer them any advice or counsel concerning uninsured motorist coverage.[2] In short, they ask this Court to determine that a licensed insurance agent has a duty to offer advice or counsel concerning uninsured motorist coverage.

Whether a duty exists is a question of law that is solely for the court to decide. *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997). In considering this question of duty and its potential expansion, it is appropriate to first look at the common-law duties inherent in an insurer-agent-insured relationship and then to consider the extent to which this relationship has been affected by certain Michigan statutes that are relevant to the establishment of an agent's duty.

It is uncontested, indeed it is essential to the cause of action pleaded by plaintiffs, that Mr. Pietrzak was Farmers' agent. As such, under the common law, he

---

[2] Plaintiffs also contend that they should at least be able to sue Mr. Pietrzak because he failed to procure "full coverage" as requested by Mr. Harts. We disagree. There is no indication in the record that Mr. Harts ever requested "full coverage" for the Cavalier. Further, as indicated previously, a little more than three months before the accident, plaintiffs were notified about the availability of uninsured motorist coverage by Farmers, and less than one month before the accident plaintiffs chose not to apply for this coverage on the Cavalier. Accordingly, we conclude that there are no facts of record on which to base this theory.

had a duty to comply with the various fiduciary obligations he owed to Farmers and to act for its benefit. *Hawkeye Casualty Co v Frisbee*, 316 Mich 540, 548; 25 NW2d 521 (1947); 1 Restatement Agency, 2d, § 13, p 52; 2 Restatement Agency, 2d, § 387, p 201. Moreover, because he was Farmers' agent, he had no common-law duty to advise plaintiffs. See *Bruner, supra* at 31-32; see also *Nelson v Davidson*, 155 Wis 2d 674, 680-681; 456 NW2d 343 (1990); 4 Couch, Insurance, 3d, § 55:5, pp 55-11 to 55-14. This general common-law rule is no doubt premised, at least in part, on the nature of the relationship of the parties. *Schultz v Consumers Power Co*, 443 Mich 445, 450; 506 NW2d 175 (1993). Specifically, the relationship between the insurer and insured is a contractual one. See *House v Billman*, 340 Mich 621, 626; 66 NW2d 213 (1954); *Drouillard v Metropolitan Life Ins Co*, 107 Mich App 608, 620-621; 310 NW2d 15 (1981). The relationship between the insurer and its agent is controlled by the principles of agency. *Hawkeye Casualty Co, supra* at 548; *Rorick v State Mut Rodded Fire Ins Co*, 263 Mich 169, 171; 248 NW 584 (1933); *Luellen v New York Life Ins Co*, 201 Mich 512, 518; 167 NW 950 (1918).

Sound policy reasons also support the general rule that insurance agents have no duty to advise the insured regarding the adequacy of insurance coverage. For instance, in *Nelson v Davidson, supra* at 681-682, the Wisconsin Supreme Court noted that a contrary rule (1) "would remove any burden from the insured to take care of his or her own financial needs and expectations in entering the marketplace and choosing from the competitive products available," (2) could result in liability for a failure to advise a client "of every possible insurance option, or even an

arguably better package of insurance offered by a competitor," and (3) could provide an insured with an opportunity to self-insure "after the loss by merely asserting they would have bought the additional coverage had it been offered."[3]

Thus, under the common law, an insurance agent whose principal is the insurance company owes no duty to advise a potential insured about any coverage. Such an agent's job is to merely present the product of his principal and take such orders as can be secured from those who want to purchase the coverage offered.[4]

Our Legislature also recognizes the limited nature of the agent's role. Those who offer insurance products have been regulated by statute in Michigan for at least 120 years,[5] with insurance agents and insurance counselors being in fact subject to licensure before they can offer their services to the public.[6] The most recent revisions to these regulatory statutes became effective in 1973.[7] What is clear from these provisions

---

[3] See also 4 Couch, *supra*, p 55-10 ("The general duty of the insurer's agent to the insured is to refrain from affirmative fraud, not to watch out for all rights of the insured and inform the latter of them").

[4] This limited role for the agent may seem unusually narrow, but it is well to recall that this is consistent with an insured's obligation to read the insurance policy and raise questions concerning coverage within a reasonable time after the policy has been issued. *Parmet Homes, Inc v Republic Ins Co*, 111 Mich App 140, 144; 314 NW2d 453 (1981).

[5] See 1871 PA 95; see also 1947 PA 66; 1945 PA 223; 1933 PA 111; 1931 PA 163; 1929 PA 154; 1917 PA 256; 1915 PA 124; 1901 PA 84; 1897 CL 5115; 1881 PA 237. The current provisions generally controlling agents and counselors are found at MCL 500.1200 *et seq.*; MSA 24.11200 *et seq.*

[6] See MCL 500.1200 *et seq.*; MSA 24.11200 *et seq.*; see also MCL 500.2116; MSA 24.12116.

[7] See 1972 PA 133, effective March 30, 1973, which added to the Insurance Code the current chapter governing insurance agents, solicitors, adjustors, and counselors, MCL 500.1200 *et seq.*; MSA 24.11200 *et seq.* The Legislature subsequently added additional conditions of licensure spe-

is that the Legislature has long distinguished between insurance agents and insurance counselors,[8] with agents being essentially order takers[9] while it is insurance counselors who function primarily as advisors.[10]

However, as with most general rules, the general no-duty-to-advise rule, where the agent functions as

---

cific to automobile insurance agents. See 1979 PA 145, effective January 1, 1981, MCL 500.2116; MSA 24.12116.

[8] For instance, as early as 1917, the Legislature provided that, while licensed insurance agents could solicit insurance, take applications, write policies, and collect premiums, only persons licensed as life insurance counselors could advise or counsel concerning the benefits, terms, value, effect, advantages or disadvantages of a life insurance policy. Cf. 1917 PA 256, pt 2, ch III, §§ 1-5 (agents), with 1917 PA 256, pt 2, ch III, § 19 (life insurance counselors).

[9] Indeed, that an automobile insurance agent's role is primarily as an order taker is further reinforced by MCL 500.2116; MSA 24.12116, which provides that as a condition of licensure a licensed insurance agent shall, among other duties, provide clients with the lowest premium quotation available and submit applications upon request. See MCL 500.2116(1)(a) and (d); MSA 24.12116(1)(a) and (d).

The concurrence mildly objects to the characterization of insurance agents as "mere order takers." *Post* at 12. However, it is worth noting that the statutes relied on by the concurrence as support for its assertion that insurance agents are more than mere order takers simply concern the training and discipline of insurance agents. Moreover, we do not intend to demean insurance agency as a means of employment and we are cognizant of the fact that agents must take classes and pass examinations. Nevertheless, the fact remains that the role of an insurance agent, as contemplated by the Legislature, is primarily that of an order taker not a counselor, and it is only to distinguish the former from the latter that we use the term "order taker."

[10] See MCL 500.1232; MSA 24.11232, which provides in relevant part as follows:

> A person shall not . . . provide advice, counsel, or opinion with respect to benefits promised, coverage afforded, terms, value, effect, advantages, or disadvantages of a policy of insurance . . . unless he or she is licensed as an insurance counselor . . . . This section does not prohibit the customary advice offered by a licensed insurance agent . . . .

Thus, as part of his function as an order taker, an insurance agent may, but is not required or under any duty to, give "customary advice."

simply an order taker for the insurance company, is subject to change when an event occurs that alters the nature of the relationship between the agent and the insured. This alteration of the ordinary relationship between an agent and an insured has been described by our Court of Appeals as a "special relationship" that gives rise to a duty to advise on the part of the agent. *Bruner, supra*; see also *Marlo Beauty Supply, Inc v Farmers Ins Group of Cos*, 227 Mich App 309, 314-315; 575 NW2d 324 (1998); *Stein v Continental Casualty Co*, 110 Mich App 410, 416-417; 313 NW2d 299 (1981); *Palmer v Pacific Indemnity Co*, 74 Mich App 259, 267; 254 NW2d 52 (1977). While we agree with *Bruner* that there must be "some type of interaction on a question of coverage," *id.* at 34, we do not subscribe to the possible reading of *Bruner* that holds reliance on the length of the relationship between the agent and the insured is the dispositive factor in transforming the relationship into one in which the traditional common-law "no duty" principle is abrogated. We thus modify the "special relationship" test discussed in *Bruner* and the other cases cited above so that the general rule of no duty changes when (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification,[11] (3) an inquiry is made that may require advice and the agent, though he need not,[12] gives advice that

---

[11] An example of an ambiguous request for coverage that might in certain circumstances require clarification is the request for "full coverage." The record reveals that Mr. Harts requested "full coverage" for the vehicle to be driven by his wife, but that he requested more limited coverage, PLPD, for the vehicles he drove to and from work. The Cavalier had the more limited coverage.

[12] See note 10.

is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured.[13]

In this case, there is no documentary evidence suggesting that Mr. Pietrzak misrepresented the coverage offered or provided. As stated, plaintiffs had in fact received notice that uninsured motorist coverage was available for the Cavalier only three months before the accident. Further, there is no evidence that Mr. Harts made a request about insurance coverage on the Cavalier that might be construed as ambiguous or that would have required clarification. Mr. Harts never requested or inquired about "full coverage" on the Cavalier. Finally, Mr. Pietrzak did not expressly agree or promise to advise Mr. Harts about insurance coverage generally or uninsured motorist coverage specifically. Thus, with respect to the coverage obtained on the Cavalier, no event occurred that could or would take this case outside the general rule that Mr. Pietrzak owed plaintiffs no duty to advise them about coverage.

Notwithstanding this fact, plaintiffs encourage this Court to eliminate the general no-duty-to-advise rule and replace it with a rule that would impose a duty to advise in cases such as the one at bar, which, to be perfectly clear, would apparently be all cases concerning the purchase of insurance. However, we decline this invitation in light of the public policy established by the Legislature's active role in this area and the previously noted compelling reasons that militate against the imposition of such a duty. Rather, we

---

[13] Cf. *Fitzpatrick v Hayes*, 57 Cal App 4th 916; 67 Cal Rptr 2d 445 (1997).

agree with the Wisconsin Supreme Court in *Nelson,* *supra* at 683, which, when faced with such an issue, stated that "if such a duty is to be imposed on the [insurance agent], it should be imposed as a statutory one and not an implied judicial one." See also, generally, *O'Donnell v State Farm Mut Automobile Ins Co,* 404 Mich 524, 542; 273 NW2d 829 (1979).

Accordingly, because plaintiffs have failed to establish the duty element of their negligence claim against Mr. Pietrzak, summary disposition in favor of Mr. Pietrzak was proper. *Smith, supra; Schultz, supra* at 449. Because plaintiffs cannot establish liability against Mr. Pietrzak, the agent, they likewise cannot establish vicarious liability against Farmers, the principal. *Kerry v Turnage,* 154 Mich App 275, 281; 397 NW2d 543 (1986); *Lincoln v Gupta,* 142 Mich App 615, 622; 370 NW2d 312 (1985). And, because Mr. Pietrzak was under no obligation to give advice about uninsured motorist coverage, Farmers cannot be liable for any alleged negligent supervision. Accordingly, summary disposition in favor of Farmers was proper. Therefore, for the reasons stated in this opinion, we affirm the decision of the Court of Appeals.

WEAVER, C.J., and CORRIGAN and YOUNG, JJ., concurred with TAYLOR, J.

CAVANAGH, J. *(concurring).* I concur in both the analysis and result of the majority opinion. I write separately to express opposition to the designation of insurance agents as mere order takers. A person must possess numerous statutory qualifications in order to become, and to fulfill, the role of a licensed insurance agent. MCL 500.1201; MSA 24.11201. Our Legislature requires that a person complete an insurance agent

program of study that has been approved by the Insurance Commissioner; the person must pass a written examination; the Insurance Commissioner may conduct investigations and submit interrogatories to the applicant concerning the person's qualifications to become an agent; the person must be an employee of, or authorized to represent, an authorized insurer; the person must possess a good business reputation and good moral character to act as an agent. MCL 500.1204; MSA 24.11204. Once licensed, an insurance agent must complete mandatory hours of continuing education as a condition of continued licensure. MCL 500.1204c; MSA 24.11204(3). Moreover, certain duties are imposed on agents regarding their relationships with both the insurer and the insured. MCL 500.1207; MSA 24.11207, MCL 500.1209; MSA 24.11209. The Insurance Commissioner may refuse to license, or he may suspend or revoke an agent's license, for failure to comply with chapter 12 of the Insurance Code. MCL 500.1242; MSA 24.11242. Upon finding violations of the code, the commissioner may also require the agent to pay a fine, refund monies, pay restitution, or order the agent to cease and desist from the violation. MCL 500.1244; MSA 24.11244. Applicable to the instant case, our Legislature has imposed specific duties upon automobile insurance agents. MCL 500.2116; MSA 24.12116.

Interestingly, MCL 500.1202; MSA 24.11202 generally provides:

(1) that certain persons may act for an insurance agent as long as there is a written contract

and the licensed agent has notified the commissioner of insurance of the contract.

(2) that clerical or administrative persons employed by an insurance agent may "take insurance applications or receive premiums."

(3) that these clerical persons may bind coverage within the agent's office.

These persons appear to be the "order takers" rather than the highly regulated insurance agents.

Given this extensive statutory scheme, it appears that our Legislature contemplated much more for the role of a licensed insurance agent than one who presents products and takes orders.

BRICKLEY and KELLY, JJ., concurred with CAVANAGH, J.