*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VINING INDUSTRIAL PARK LLC and VINING INDUSTRIAL PARK-GA LLC,

UNPUBLISHED
May 25, 2023

Plaintiffs-Appellants,

v

No. 361818
Kent Circuit Court
LC No. 20-008983-CB

J.L. SCHWARTZ INSURANCE AGENCY, INC.
and JERROLD LEE SCHWARTZ,

Defendants-Appellees.

Before: CAMERON, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(10). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff Vining Industrial Park, LLC ("Vining") is a limited-liability company owned by Tom Owen. Vining's assets principally included a 300,000 square foot warehouse building (the "Vining Building") located in Greenville, Michigan. In 2009, Owen sold 50% of his interest in the Vining Building to plaintiff Vining Industrial Park-GA, LLC, a limited-liability company owned by Anthony Frank. Defendant J.L. Schwartz Insurance Agency, Inc. ("JLS") is an insurance agency that, at the time of the relevant events, was owned by defendant Jerrold Lee Schwartz. JLS acted as Vining's insurance agent ever since Vining's inception.

-1-

The Vining Building was always insured under policies that set the limits at the "actual cash value" of the Building, as opposed to a "replacement cost" policy.[1]  At the time of the fire that destroyed the Vining Building, the insurance policy stated, in relevant part:

> We will determine the value of Covered Property in the event of loss or damage as follows:
>
> A. At Actual Cash Value as of the time of loss or damage . . . .

Owen admitted that when he received policy renewals from Auto-Owners Insurance Company—the company that issued the policy at issue—he would read them.  Owen also acknowledged that he knew the policy for the Vining Building was an "actual cash value" policy, which he described as "replacement cost minus depreciation . . . ."  Although Owen could not pinpoint any specific conversation, he claimed that he was "assured" by Schwartz "15 times" that, regardless of the language in the policy, the coverage would be sufficient to replace 250,000 square feet of the Vining Building should it be declared a loss.

It was Owen's understanding that whatever assurances were made by Schwartz, the source of the information—i.e., the adequacy of the policy limit to rebuild 250,000 square feet—was Auto-Owners.  For his part, Schwartz denied any such conversations took place regarding the adequacy of the coverage before the fire destroyed the Vining Building.  Schwartz also stated that neither he nor his agency would have been capable of independently calculating the replacement cost of the Vining Building and, thus, would have been unable to provide such assurances.

Although Owen insisted the parties discussed rebuilding 250,000 square feet of the Vining Building should a loss occur, Owen also admitted he never took any independent steps to determine what it would cost to rebuild such a building.  According to Owen, "Auto-Owners supplied that information on all of our real estate . . . so I would assume that, you know, their information would be more accurate than what I could provide."  Owen claimed it would have been a "monumental task" to determine the replacement cost of 250,000 square feet because he was "not a contractor" and "wouldn't know what they could reuse."  Rather, Owen simply stated that he requested that there be sufficient insurance proceeds for "a modern style . . . pre-engineered steel building that we could rebuild 250,000 square feet which we could house the tenant," a company called "LKQ."

On December 7, 2019, a fire occurred at the Vining Building that destroyed the majority of the structure.  According to Owen, to rebuild the Vining Building to accommodate LKQ would have cost plaintiffs $55 per square foot, totaling approximately $13,860,000; however, the payment from Auto-Owners created a shortfall of more than $7,000,000.  LKQ refused to agree to an increase in rent to cover the shortfall, and plaintiffs decided not to rebuild the Vining Building.

In 2020, plaintiffs filed a complaint against defendants in the trial court asserting two claims each of breach of contract and negligence (each pair of counts was asserted against each

---

[1] According to Schwartz, a "replacement cost" policy "is a policy insuring a structure for a hundred percent of its value for replacement cost."  An "actual cash value" policy insures the asset for "replacement cost less depreciation."

defendant separately). In the complaint, plaintiffs alleged and admitted that at the time Auto-Owners issued the initial policy in 2005, "Plaintiffs knew the Property was not insured for its full replacement cost value." Plaintiffs therefore "were not likely to rebuild the Property in the same way it had been constructed because the Property was old, the type of frame and construction was cost prohibitive, and its dimensions were not based on the current needs of Plaintiffs' tenant."

Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiffs failed to establish any "special relationship" between the parties and, as a result, defendants had no duty to advise plaintiffs regarding the adequacy of their coverage. Defendants highlighted the fact that Owen knew the policy limits and that the policy was for actual cash value, as well as the fact that to the extent representations were made concerning the ability to rebuild 250,000 square feet, those representations came from Auto-Owners. As a result, any claim that defendants failed to follow standard customs for insurance agents was meritless because defendants had no ability to independently determine if the coverage limits were sufficient. Defendants also argued that plaintiffs failed to demonstrate any misrepresentation because plaintiffs had the information available to them to determine the truth of the representations.

The trial court agreed with defendants' arguments and granted the motion. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022). "When reviewing a motion under MCR 2.116(C)(10), . . . this Court considers all evidence submitted by the parties in the light most favorable to the nonmoving party and grants summary disposition only when the evidence fails to establish a genuine issue regarding any material fact." *Gavrilides Mgt Co, LLC v Mich Ins Co*, 340 Mich App 306, 314; 985 NW2d 919 (2022). "A genuine issue of material fact exists 'when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party.' " *Mendelson Orthopedics PC v Everest Nat'l Ins Co*, 328 Mich App 450, 457; 938 NW2d 739 (2019), quoting *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

## III. ANALYSIS

Plaintiffs first contend that the trial court erred when it granted defendants' motion for summary disposition because it ignored conflicting testimony regarding how the policy limits were set. According to plaintiffs, Schwartz gave conflicting accounts of how the policy limits were determined. In contrast, plaintiffs highlight Owen's testimony that he asked for, and was told he would receive, a policy that would allow him to rebuild 250,000 square feet using preengineered steel using modern construction techniques.

We find this argument unpersuasive because plaintiffs misunderstand the importance of the testimony they highlight as the source of the error. Viewing the evidence in the light most

favorable to plaintiffs, Owen asked Schwartz to obtain a policy of insurance sufficient to rebuild 250,000 square feet using modern construction and preengineered steel. Again, according to plaintiffs, Owen was subsequently assured by Schwartz that, after consultation with Auto-Owners, such a policy was in effect. Owen never equivocated, however, that it was his and Schwartz's understanding that the *source* of the assurances was Auto-Owners. For example, Owen stated that "Auto-Owners supplied that information on all of our real estate . . . so I would assume that, you know, their information would be more accurate than what I could provide." Owen also stated that he "was told that Auto-Owners thought that the coverage would be adequate to do—to rebuild 250,000 square feet, and we left it there." Although Schwartz denied any such conversation took place, that is of no moment for purposes of the trial court's decision, since the court assumed, for purposes of deciding the motion, that the conversation did occur.

In other words, according to Owen's testimony, he asked Schwartz to obtain the requested policy, which Schwartz did, only Auto-Owners failed to determine the actual cash value of the Vining Building when it set the limits, even though it assured the parties that such limits would be sufficient for plaintiffs' desired rebuild. The trial court accepted these facts as true, as it was required to do under MCR 2.116(C)(10), and nevertheless granted defendants' motion in light of those facts. This was not error by the trial court.

Next, plaintiffs argue the trial court erred when it granted defendants' motion for summary disposition because plaintiffs demonstrated a genuine issue of material fact whether defendants breached their duty as insurance agents to procure the requested policy. According to plaintiffs, defendants had a duty to obtain the insurance policy plaintiffs ordered, i.e., a policy that would replace up to 250,000 square feet of the Vining Building with modern construction techniques. Plaintiffs contend that had the court analyzed the claim properly, it was evident there was conflicting testimony from Owen and Schwartz as to what was requested over the years before the fire occurred.

"Michigan law recognizes a cause of action in tort for an insurance agent's failure to procure requested insurance coverage . . . ." *Holton v A+ Ins Assocs, Inc*, 255 Mich App 318, 324; 661 NW2d 248 (2003). "[U]nder the common law, an insurance agent whose principal is the insurance company owes no duty to advise a potential insured about any coverage because the agent's job consists merely of present[ing] the product of his principal and tak[ing] such orders as can be secured from those who want to purchase the coverage offered." *Zaremba Equipment, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 27; 761 Mich App 151 (2008) (quotation marks and citation omitted; alterations in original). "[G]iven that captive agents are order takers, it follows that there is a duty to [prepare the insurance application] accurately and not contribute false information to the application, whether purposefully or mistakenly." *Holman v Farm Bureau Gen Ins Co of Mich*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 357473), slip op at 6.

Again, plaintiffs misunderstand the importance of the testimony they highlight to this Court. Viewing the evidence in the light most favorable to plaintiffs, Owen asked Schwartz to obtain a policy that would allow him to rebuild 250,000 square feet in the event of a total loss. According to Owen, Schwartz purportedly obtained actual cash value policies, believing from Auto-Owners that the coverage amounts would be sufficient to rebuild 250,000 square feet. It is immaterial whether Schwartz testified that he was never asked to obtain such a policy. It is also immaterial—for purposes of this argument—whether plaintiffs provided sufficient information to

allow defendants to accomplish their task. According to Owen's testimony, he asked for and received an actual cash value policy of insurance, which both he and Schwartz believed, on the basis of representations from Auto-Owners, would be sufficient to rebuild 250,000 square feet. Owen stated that each year, he received and read the policy renewals issued by Auto-Owners. Accordingly, there was no breach of defendants' duty to procure because, viewing the evidence in the light most favorable to plaintiffs, defendants did procure the policy but were misled by Auto-Owners regarding the sufficiency of the coverage.

Lastly, plaintiffs argued the trial court erred because plaintiffs presented sufficient evidence to show that a "special relationship" between the parties was created such that defendants had a "duty to advise" plaintiffs regarding the adequacy of the coverage obtained. Plaintiffs assert that the parties had a special relationship because defendants were the insurance agent for Owen for approximately 30 years, during which time defendants procured insurance for Owen personally and for his companies. Plaintiffs also contend that a special relationship was created because Schwartz also made decisions on behalf of plaintiffs without plaintiffs' knowledge, such as failing to share with plaintiffs a report from Auto-Owners recommending that the policy limits be lowered. We disagree.

"[A]n insurance agent whose principal is the insurance company owes no duty to advise a potential insured about any coverage." *Harts v Farmers Ins Exchange*, 461 Mich 1, 8; 597 NW2d 47 (1999). "Such an agent's job is to merely present the product of his principal and take such orders as can be secured from those who want to purchase the coverage offered." *Id*. "However, as with most general rules, the general no-duty-to-advise rule, where the agent functions as simply an order taker for the insurance company, is subject to change when an event occurs that alters the nature of the relationship between the agent and the insured." *Id*. at 9-10.

> [T]he general rule of no duty changes when (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured. [*Id*. at 10-11 (footnote omitted).]

In their argument, plaintiffs emphasize the length of the relationship between Owen and Schwartz, noting that their business relationship spanned over 30 years. However, this argument is unpersuasive because "reliance on the length of the relationship between the agent and the insured is [not a] dispositive factor in transforming the relationship into one in which the traditional common-law 'no duty' principle is abrogated." *Id*. at 10. Similarly, plaintiffs highlight the fact that in 2014, Auto-Owners conducted a study of the Vining Building, which resulted in a recommendation that the policy limits be lowered. Schwartz admitted that he did not communicate this recommendation to plaintiffs. Plaintiffs attempt to shoehorn this fact into the fourth factor above, arguing that by failing to communicate the recommendation, defendants undertook

additional duties which gave rise to a special relationship. But plaintiffs fail to explain how that additional duty arose by express agreement or promise with plaintiffs.[2]

The simple fact, undisputed by plaintiffs, is that each year Owen received the policy renewals from Auto-Owners. Upon receipt, Owen stated that he read them. Owen also admitted, both in plaintiffs' complaint and his own deposition, that he knew each renewal was a policy for the actual cash value of the Vining Building, which he described as "replacement cost minus depreciation." Nowhere in the policy documents was there any representation that the actual cash value would be sufficient to rebuild to plaintiffs' desired specifications. Because plaintiffs failed to establish that a special relationship arose between the parties, the trial court did not err when it granted summary disposition in favor of defendants.

Affirmed. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

---

[2] Plaintiffs also assert in their reply brief on appeal that the trial court erred by failing to find a special relationship between the parties because, to the extent defendants did not understand the request for coverage that plaintiffs made, defendants had a duty to inquire further. By failing to raise this issue in the trial court, plaintiffs have failed to preserve the argument and have waived it. See *Soaring Pine Capital Real Estate and Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, 337 Mich App 529, 539-540; 976 NW2d 674 (2021) (stating that to preserve an argument for appeal, the party must first raise the issue in the lower court). But even if the argument were not waived, the assertion that the request was ambiguous is unpersuasive. As stated above, plaintiffs admitted their policy renewals unambiguously stated that the policy would only cover the actual cash value of the Vining Building.