*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAWRENCE S. HOLMAN,

       Plaintiff-Appellant,

V

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN, JONATHAN
HEINZMAN AGENCY, INC., and JONATHAN
HEINZMAN,

       Defendants-Appellees.

UNPUBLISHED
March 17, 2026
11:03 AM

No. 370964
Oakland Circuit Court
LC No. 2019-178713-NI

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

Plaintiff thought he was insured when he suffered serious injuries in an automobile accident. After discovering he was not, he brought this negligence and vicarious liability action contending that his insurance agent had a duty to tell him that he was not insured. The trial court disagreed. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This dispute arises out of an automobile insurance transaction between plaintiff, Lawrence Holman, and defendant, Farm Bureau General Insurance Company of Michigan. Plaintiff purchased a SUV on December 30, 2014. Via a telephone call with a Farm Bureau sales agent— defendant, Jonathan Heinzman—plaintiff applied for a six-month insurance policy with Farm Bureau for that vehicle. As part of his application (which he signed the following day), plaintiff answered the following question in the negative: "Has the Applicant or a member of the Applicant's household driven or moved any vehicle owned by the Applicant which has NOT had the required insurance in force for the preceding six months?" He also identified his having a policy with AAA in force through January 15, 2015, which was information Heinzman used to submit the application for underwriting.

Farm Bureau issued plaintiff a Certificate of No-Fault Insurance, effective December 30, 2014 to January 29, 2015. The Certificate provided, however, that it was "not a guarantee that the

-1-

policy is in effect or will remain in effect." Critically, on January 30, 2015, Farm Bureau sent plaintiff a letter informing him that it could not accept his application for insurance—it was missing plaintiff's proof of prior insurance and thus was incomplete. Less than a week later, on February 5, 2015, and without receipt of that letter, plaintiff was critically injured in a car accident.

## A. *HOLMAN I*

Plaintiff filed a request for declaratory relief under MCR 2.605 declaring that Farm Bureau insured him at the time of the accident and a claim of entitlement to personal protection insurance benefits. See *Holman v Mossa-Basha*, unpublished per curiam opinion of the Court of Appeals, issued November 29, 2018 (Docket Nos. 338210 and 338232), p 2 (*Holman I*). This Court affirmed the trial court's grant of summary disposition against plaintiff on those claims, concluding that even if the Certificate was a binder providing temporary coverage, it expired before the accident date and thus plaintiff did not have any automobile insurance with Farm Bureau when the accident occurred. *Id*. at 5-6. In addition, this Court held that Farm Bureau was entitled to recission because defendant made two material misrepresentations on his insurance application: "(1) that he did not operate an uninsured motor vehicle owned by him in the six-month period preceding his insurance application; and (2) that he held current automobile insurance at the time of his application." *Id*. at 7. This Court denied reconsideration, *Holman v Mossa-Basha*, unpublished order of the Court of Appeals, entered January 17, 2019 (Docket No. 338210), and the Supreme Court denied leave, *Holman v Mossa-Basha*, 504 Mich 997 (2019).

## B. *HOLMAN II*

That leads us to the current litigation. Plaintiff alleges that Heinzman (and his agency, defendant, the Jonathan Heinzman Agency) is responsible for his negligently filling out the application of insurance and that Farm Bureau is vicariously liable for Heinzman's negligence. See *Holman v Farm Bureau Gen Ins Co of Mich*, 342 Mich App 492, 494-495, 497; 995 NW2d 580 (2022) (*Holman II*). Of note to this appeal is what Heinzman did after learning that plaintiff was not insured when he submitted his application:

> Heinzman testified that he knew that Farm Bureau would cancel plaintiff's policy. According to his notes of his communications with plaintiff, however, Heinzman told plaintiff on January 6, 2015, that Farm Bureau would "probably" cancel the policy. Similarly, after receiving an e-mail from Farm Bureau regarding the missing proof of prior insurance, Heinzman called plaintiff on January 7, 2015, and told him that Farm Bureau "may terminate coverage . . . ." Heinzman also testified that he offered to look for coverage for plaintiff through a different insurance company. In contrast, plaintiff denied that Heinzman told him that Farm Bureau would not be insuring him or that he needed to look for other coverage. Plaintiff testified that when he spoke to Heinzman on February 1 or 2, 2015, Heinzman said that the Farm Bureau application was "taking too long in underwriting" and offered to look for coverage elsewhere as a "backup plan" in case the application was not approved. Heinzman found a quote for plaintiff through AAA, but plaintiff turned it down on February 3, 2015, because it was too expensive. [*Id*. at 498-499.]

On appeal from the trial court's determination that collateral estoppel barred plaintiff's claims, this Court reversed and remanded. *Id*. at 494. First, this Court held "*Holman I* did not actually and necessarily decide whether plaintiff or Heinzman made the misrepresentations" because it "did not need to decide whether any misrepresentation was attributable to plaintiff or Heinzman for purposes of determining whether Farm Bureau was entitled to rescission because plaintiff affirmed the contents of the application as the signing party." *Id*. at 501-502. Second, this Court rejected defendants' alternative argument that "plaintiff ratified any misrepresentation," concluding that an insured's duty to read insurance policy documents did not preclude a negligence action against the agent and that an insured's failure to identify a misrepresentation in the application allegedly made by the agent could be considered when determining comparative fault and proximate cause. *Id*. at 502-505.

Significant for our purposes is this Court's discussion concerning an insurance agent's duty to advise on the adequacy of coverage:

> Defendants correctly observe that [*Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16; 761 NW2d 151 (2008),] concerned an agent's duty to advise on the adequacy of coverage. Generally, "insurance agents have no duty to advise the insured regarding the adequacy of insurance coverage." *Harts v Farmers Ins Exch*, 461 Mich 1, 7; 597 NW2d 47 (1999). "[A]n agent's job is to merely present the product of his principal and take such orders as can be secured from those who want to purchase the coverage offered." *Id*. at 8. But a " 'special relationship' " can be created that gives rise to a duty to advise in certain circumstances. See *id*. at 10-11.

> While *Zaremba* concerned an insurance agent's duty to advise on the adequacy of coverage, this case primarily concerns the scope of an agent's duty in preparing the application, which Michigan caselaw has not expressly addressed. However, given that captive insurance agents are "order takers," *Harts*, 461 Mich at 9, it follows that there is a duty to do so accurately and not contribute false information to the application, whether purposefully or mistakenly. Thus, it is not necessary for us to determine whether there was a special relationship between plaintiff and Heinzman because this case falls within the more general, limited duty to take orders described in *Harts*.[4] *Id*. at 8.

---

[4] Plaintiff's complaint also implies that Heinzman breached a duty by failing to explicitly tell plaintiff that his insurance policy would be canceled and that he needed to obtain other coverage. We are not aware of any caselaw addressing whether an insurance agent has a duty to advise the insured about a forthcoming cancelation or rejection of an application. Even if no such duty exists, however, "[w]hen a person voluntarily assumes a duty not otherwise imposed by law, that person is required to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task." *Zine v Chrysler Corp*, 236 Mich App 261, 277; 600 NW2d 384 (1999) (quotation marks and citation omitted). And

there is a question of fact regarding the efforts Heinzman made to communicate the pending or potential cancelation of plaintiff's policy.

_____

And under *Zaremba*, plaintiff's corresponding duty to review the entire application may be considered in determining comparative fault, but it does not bar a negligence action against Heinzman. [*Id*. at 504-505.]

### C. *HOLMAN III*

In lieu of granting defendants' applications for leave to appeal, our Supreme Court reversed *Holman II* "to the extent it held that the defendants were not entitled to summary disposition of plaintiff's claim asserting that the defendants were negligent in not ensuring that he had insurance coverage" because it was "plaintiff's own failure to provide proof of prior insurance that led to the defendants' denial of coverage." *Holman v Farm Bureau Gen Ins Co of Mich*, 511 Mich 974, 974 (2023) (*Holman III*). The Supreme Court then noted the failure-to-notify issue and remanded to the trial court for further proceedings:

> The plaintiff also alleged that the defendants were negligent in failing to notify him that coverage would be or had been rejected. The Court of Appeals addressed this theory as to Heinzman and said that though it was unaware of any caselaw addressing whether an insurance agent has a duty to advise of an impending cancellation, when a person voluntarily assumes a duty, they must act as an ordinarily prudent person; the Court of Appeals then said there was a question of fact regarding Heinzman's communications about the potential cancellation of the policy. We take no position on whether the defendants owed the plaintiff a duty to warn of a potential cancellation or notify of a recent cancellation in a more timely manner, or the source or scope of that duty. Because the trial court did not specifically address the plaintiff's claim that the defendants breached a duty by failing to notify him that his insurance policy would be or had been cancelled, we remand to the trial court to address that claim. [*Id*. (citation omitted).]

### D. PROCEEDINGS ON REMAND

Back before the trial court, defendants moved for summary disposition on plaintiff's negligence claim. They asserted that under *Harts*, 461 Mich 1, Heinzman had no duty to advise plaintiff of a pending or recent cancellation and that Heinzman and plaintiff did not form a special relationship sufficient to impose such a duty as an exception to the general no-duty-to-advise rule. The trial court agreed and granted summary disposition in defendants' favor under MCR 2.116(C)(10). Plaintiff now appeals as of right.

## II. ANALYSIS

"Professional malpractice arises from the breach of a duty owed by one rendering professional services to a person who has contracted for those services." *Broz v Plante & Moran, PLLC*, 331 Mich App 39, 50; 951 NW2d 64 (2020). "A professional malpractice claim is a tort

claim predicated on the failure of the defendant to exercise the requisite professional skill." *Id*. All negligence actions, including plaintiff's claim of professional negligence, require the plaintiff to prove four elements: duty, breach, causation, and harm. *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). Duty "is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id*. (quotation marks and citation omitted). "Whether a duty exists is a question of law that is solely for the courts to decide," *Harts*, 461 Mich at 6, and we review de novo a trial court's grant of summary disposition, *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

Heinzman is a captive agent of Farm Bureau and under the common law, he "had a duty to comply with the various fiduciary obligations he owed to [Farm Bureau] and to act for its benefit." *Harts*, 461 Mich at 6-7. He thus "owe[d] no duty to advise a potential insured about any coverage. Such an agent's job is to merely present the product of his principal and take such orders as can be secured from those who want to purchase the coverage offered." *Id*. at 8. The issue on appeal is whether the "special relationship" exception to this "general no-duty-to-advise rule" applies to the facts of this case, which concern only the policy's duration (and not scope). We agree with the trial court that it does not.

## A.  IMPORT OF *HOLMAN II*

Relying on footnote four of this Court's *Holman II* decision, plaintiff suggests this Court has already held that Heinzman owed plaintiff a duty and that a question of fact existed regarding breach. As set forth, *Holman II* suggested that when a person voluntarily assumes a duty, the person is required to perform it carefully, and there was "a question of fact regarding the efforts Heinzman made to communicate the pending or potential cancelation of plaintiff's policy." 342 Mich App at 505 n 4. We are not bound by that dictum.

Dictum is a "judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)." *Carr v Lansing*, 259 Mich App 376, 383-384; 674 NW2d 168 (2003) (quotation marks and citations omitted). *Holman II*'s footnote four mentions an issue it declined to fully address, making it not binding. *Id*. Moreover, the Supreme Court in *Holman III*, 511 Mich at 974, specifically remanded this matter to the trial court to address this issue in the first instance. A point plaintiff's counsel conceded during oral argument. When an appellate court remands a case with clear instructions, the lower court is obligated on remand to strictly comply with the mandate of the appellate court and cannot exceed the scope of the remand order. *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544-545; 705 NW2d 365 (2005). Thus, the dictum in footnote four of *Holman II* is not binding, and the trial court was required to address whether Heinzman had this duty.

## B.  DUTY TO INFORM

Under *Harts*, an "ordinary relationship between an agent and insured" can change into a "special" one so as to give "rise to a duty to advise on the part of the agent." 461 Mich at 10. *Harts* sets forth four ways the "general rule of no duty" can change: "(1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that

requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured." *Id*. at 10-11. Plaintiff contends the material facts demonstrate he formed a special relationship with Heinzman under the first and fourth scenarios. We address each in turn.

On the first, there is no evidence that Heinzman misrepresented the nature of the coverage to plaintiff. Heinzman testified that he told plaintiff on January 7, 2015 that Farm Bureau was "going to terminate coverage January 21st for missing prior proof." Plaintiff disputes this account, but that factual dispute does not matter for our resolution of this appeal because plaintiff focuses on Heinzman telling him that Farm Bureau "may" or "probably" would terminate his coverage. Contrary to plaintiff's assertion, this does not amount to a misrepresentation because everything Heinzman said was true. Plaintiff knew that Farm Bureau required proof of prior insurance for the six months leading up to the new policy, and he knew his last insurance on his previous car ended in 2013. And he was aware that the temporary certificate was just that, with a 30-day expiration date. The Certificate's language makes clear that it was not an actual policy, and any coverage could be cancelled for any policy violations, including a failure to provide proof of prior insurance. Plaintiff's most favorable reading of the record is that Heinzman told plaintiff coverage would probably terminate without the proof of insurance—factual statements that plaintiff understood to be true. Thus, Heinzman made no material, false representations to plaintiff regarding the duration of his coverage that established a special relationship to impose a duty to advise on Heinzman. *Id*.

Similarly, there is no record evidence demonstrating Heinzman assumed an additional duty by express agreement or promise to plaintiff under the fourth scenario contemplated by *Harts*. Plaintiff argues that despite his knowledge that proof of insurance for the prior six months was required and that termination would likely occur at the expiration of the temporary period, Heinzman's statements caused plaintiff to forego the opportunity to secure alternative coverage on the surplus market. This argument is a bridge too far. The record reflects that Heinzman did not make any express agreement or promise to plaintiff that he would advise plaintiff on the timing or possibility of cancellation. Rather, the evidence establishes plaintiff did not heed Heinzman's warnings. Plaintiff cannot ignore his own knowledge of the requirements of the offered coverage in the face of what he alleges to be false promises. Thus, a special relationship was not formed by way of express agreement or promise to exempt Heinzman from the general no-duty-to-advise rule. *Id*. at 11.[1]

Plaintiff's failure to establish a special relationship with Heinzman forecloses his claims against defendants. His negligence claim against Heinzman (and his Agency) thus fail for lack of duty, *Kandil-Elsayed*, 512 Mich at 110, which means there can be no vicarious liability on the part

---

[1] To the extent plaintiff suggests Heinzman similarly assumed such a duty because he offered to help plaintiff secure coverage from another insurer, the record demonstrates Heinzman found a quote for plaintiff and that plaintiff turned it down for being too expensive. So even assuming that offer created a duty, he fulfilled it.

of Farm Bureau, see *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280, 294; 731 NW2d 29 (2007). As such, the trial court properly granted defendants summary disposition under MCR 2.116(C)(10).[2]

## C.  AMENDMENT

Finally, we address plaintiff's short argument at the end of his appellate brief that dismissal under MCR 2.116(C)(8) is inappropriate because he could cure his defective complaint via amendment.  See MCR 2.116(I)(5).  That is discordant with what the trial court did—it granted summary disposition under (C)(10), and that grant is what we have reviewed above.  The reason for the disconnect between plaintiff's argument here and what the trial court did appears to rest on—generously—inadvertent error.  A review of the lower court record reflects that plaintiff reproduced, word for word, a section of his response to defendants' motions for summary disposition in his appellate brief here without regard to whether that argument matched the issues on appeal.  We thus deem an such argument abandoned.  See *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998).

## III. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock

---

[2] Because we agree with the trial court that plaintiff did not sufficiently establish a special relationship, we do not address defendants' alternative arguments to affirm raised on appeal.