| 79 | 245 |
| f107 | 170 |

| 79 | 245 |
| 126 | 278 |
| 126 | 281 |

## THE STATE INSURANCE COMPANY v. JAMISON.

Fire Insurance: FAILURE OF AGENT TO REPORT RISK: DAMAGES:
PROXIMATE CAUSE: EVIDENCE. Defendant was plaintiff's agent,
authorized to issue policies, but charged with the duty of promptly
reporting risks taken. Defendant issued a policy, but neglected to
report the same to plaintiff, as was his duty, and plaintiff did not
know of the risk until after the insured property had been con-
sumed by fire. Plaintiff paid the loss, as it was legally bound to
do, and in this action it seeks to recover the amount of defendant
on the ground of his negligence. *Held* that it was competent for
plaintiff to introduce evidence tending to show that if defendant
had duly notified it of the risk it would have cancelled the policy
before the fire, as it had the right to do, and thus avoided the loss;
because, if it could establish that fact, it would appear that defend-
ant's negligence was the proximate cause of plaintiff's damage,
and defendant would be liable therefor. (See opinion for cita-
tions.)

*Appeal from Wayne District Court.*—HON. JOHN W.
HARVEY, Judge.

FILED, FEBRUARY 1, 1890.

THE defendant, John Jamison, was, in 1884, the
recording agent of the plaintiff at Seymour, Iowa, hav-
ing authority to issue policies. It was his duty, and he
was instructed, to make to the company a daily report

of all the policies issued by him, giving a full and complete description of the policy, as well as the property insured. On the second day of August, 1884, Jamison issued a policy of insurance on behalf of the plaintiff company to the Independent Order of Odd-Fellows, insuring a frame hall and furniture, in the aggregate fourteen hundred dollars. He made no report of this policy until after the property insured by it was burned, on the ninth day of August, 1884. The company paid the loss in full, and brings this suit to recover the amount paid to the insured, on the ground that the defendant negligently failed to perform his duty, and thus prevented the company from exercising its right to cancel the risk. Upon the trial the court, at the close of plaintiff's testimony, directed the jury to find for the defendant, and gave judgment for the defendant, from which the plaintiff appeals.

*Cummins & Wright*, for appellant.

*Freeland & Miles* and *W. F. Vermilion*, for appellee.

GRANGER, J.—The specific errors assigned and argued have reference to the action of the court in excluding evidence. The ground upon which the court instructed the jury to return a verdict for the defendant does not appear, as the defendant's motion for that purpose is not in the record. However, from the argument of counsel we infer that the ground of the ruling was that the damage sought to be recovered was not the proximate result of the wrongs complained of, or, in other words, that the loss did not result from the failure to report the policy. To a proper understanding of the court's rulings upon the testimony offered, a few facts should be well in mind: (1) That the insurance company had paid the policy issued by its agent, the defendant; (2) that the loss occurred after the policy issued, and before the agent notified the company of its issuance; (3) that it was the duty of the defendant to

give such notice on the day a policy issued, in order that the company might avoid the policy if it so elected. (4) that the company was, in any event, liable on the policy until it was canceled.

A fact which the plaintiff sought on the trial to establish was that, if the notice had been given by the agent (defendant) of the issuance of the policy, it would have been annulled, and the company's liability avoided. As we understand, the court excluded all testimony tending to establish this fact, and the principal inquiry on this appeal is, should the evidence have been admitted? Or, in other words, is the fact sought to be established a material one in the case? By the terms of the policy the company had the right to cancel it when reported by their agent. If the policy had been reported and canceled before the fire, the loss of the company would certainly have been avoided. The company, in making its contract with the agent, whereby he could issue policies, had taken the precaution to direct that the company should be notified on the day a policy issued, that it might determine the character of the risk, and continue or cancel it, as it thought advisable. Such a direction is certainly judicious, and in the interest of safe business management. Keeping in view the fact that the object of the prompt reporting of policies issued was to enable the company, and not the agent issuing the policy, to judge of the character of the risk, we think we may satisfactorily determine this question.

Appellee, in argument, says: "Was plaintiff's loss the direct or natural result of defendant's failure to report, or was the defendant's failure to report to plaintiff the proximate cause of plaintiff's loss?" Appellee answers in the negative. But let us consider the question. We think appellee submits his query with reference to the loss of plaintiff, but in his reasoning and conclusion he has in view the loss of the assured. He says: "The fire was the cause of plaintiff's loss, and surely defendant's neglect to report in no way caused the fire." That is true; but the real question is, did defendant's neglect

to report cause plaintiff to pay for the loss by fire? The fire would have occurred without any reference to the policy or the report, and the loss would have been paid. But the loss to the plaintiff depended entirely on the existence of the policy. The policy was in existence when the loss occurred, and the plaintiff was made liable for its payment. Now, was it in existence in consequence of the wrongful act of the defendant? Admitting it, and it must be conceded that such wrongful act or neglect caused the loss to the plaintiff; and we think it must be conceded that it was a direct result of the wrongful act. Admit for the argument that the policy would have been canceled if the report had been duly made. It is exactly equivalent to admitting that the policy at the time of the fire would not have been in existence, and hence no liability of the plaintiff.

Appellee refers to the case of *Kimball v. Connolly*, 2 Abb. Dec. 504, but the holding there is upon facts very dissimilar. In brief, the point in that case is that a party desiring to obtain a loan applied to the clerk to have the records searched as to the title of the land to be offered as security. The law of New York made it the duty of the clerk to have "searchers" in his office for that purpose, and made it the duty of the clerk to certify to the correctness of the return, and also made him liable for errors, etc. In that case the return omitted a certain judgment, but upon the title as returned by the clerk the loan was obtained. The premises were afterwards sold by virtue of the omitted judgment, and the executor of the party who had procured the search and return paid quite a large amount to secure a reconveyance of the land. The suit was for damage against the clerk for error in the return as to title. The court held that there could be no recovery, but based its holding on the fact that Mrs. Le Roy, who procured the return, "bought no property, and parted with nothing of value by reason of the erroneous return." The case practically holds that the return was obtained to secure the loan, and that it was secured; that the loan company

might have been subjected to loss by the security being insufficient because of the lien not reported. The court says it was no injury to Mrs. Le Roy to have the money paid to her, instead of being paid by the loan company in satisfaction of the judgment. Appellee quotes the following language from the opinion in the case, and seems to rely upon it: "However probable it may be that the judgment would have been paid off by the insurance company out of the proceeds of the loan, if it had been returned upon the search, it is impossible to declare at this time that it would have certainly been so applied. Her object in causing the search to be made was not defeated by the omission to return the judgment. She did not seek information about her title for any purpose but that of obtaining the loan. It is no ground of complaint that she was not awakened by the return to take action for the removal of this judgment. The knowledge which she would have derived from the return of it would have been merely incidental; and it is uncertain whether the return or the knowledge thereby acquired would have been applied by Mrs. Le Roy to any purpose whatever. No one can say what actually would have been done under a different state of facts from those which actually occurred. It is no answer to say that she could, or that she might, have paid the judgment, or prevented a sale. It does not make it certain that it would have been done. The payment was not a necessary consequence of a correct return by the clerk, and without such a direct and necessary result to flow from this act or omission the defendant cannot be made chargeable with damages."

As we understand, this citation by appellee is to show that the fact that the policy would have been canceled if it had been reported cannot be established; that it is not susceptible of proof. It seems to us that the citation from the opinion is rather against than in support of such a rule. The entire reasoning of the case is that Mrs. Le Roy was not seeking the return for information that she might know of incumbrances and

pay them off, but to show a title on which to obtain a loan, and that with the title as it was returned she obtained the money, which would otherwise have gone to pay the judgment. There does not appear to have been an attempt to prove that she herself would have paid off the judgment had she known it after the loan was obtained. It is in view of such facts that the court, in the opinion, says: "It is uncertain whether the return, or the knowledge thereby acquired, would have been applied by Mrs. Le Roy to any purpose whatever. * * * It is no answer to say that she could, or that she might, have paid the judgment, or prevented a sale. It does not make it certain that it would have been done."

There is no purpose in this case to show that the policy could or might have been canceled, but the attempt was to prove that it would have been done. There is nothing in the New York case to show, or from which it could be inferred, that if the return had been obtained to guide her in the discharge of liens against the land, and the error had occurred by which she suffered damage, she might not have shown that if the judgment had been returned she would have paid it off, and avoided the damage. The case of *Smith v. Telegraph Co.*, 7 Ky. Law. Rep. 22, is cited by appellee. The case is this: A broker had purchased stocks for the plaintiff, and attempted to inform him of the purchase by telegram. The telegraph company negligently failed to deliver the message. The market declined, margins were not put up, and the broker, not hearing from his principal, sold the stocks at a loss, to recover which the suit was brought. The court held there could be a recovery of no more than nominal damages, because the damages claimed were uncertain, remote and speculative. It must be conceded that the rule in that case is closely drawn upon the facts stated, and the conclusion seems to be based on the theory that the damages sought "could not in the ordinary course of events have been expected to arise from" the cause of

The State Ins. Co. v. Jamison.

action.. That cannot be said of the case at bar. The defendant was engaged in the business of insurance. It must have occurred to him that a principal object of an early report of policies issued was for the company to determine if it would carry the risk, and the payment of any loss that might occur under the terms of the policy is just the damage that reasonably might have been anticipated. The citations from Sutherland on Damages are in harmony with the rule we here announced. There is no conflict as to the rule of law, if the facts are properly understood.

A question in the case is, how can it be established that the company would have canceled the policy if it had been duly reported? Of course, the fact, under the testimony, must be determined by the jury. But suppose it should appear in testimony that the company had an invariable business rule that it would carry only a certain number of risks in a single block or row of buildings, and that in many and all cases where a risk in excess of the number had been reported it had been canceled, and that this case came clearly within such a rule: and let it be added that this was an extra hazardous risk; that it was such a risk as is generally refused by insurance companies, and such a one as to the ordinary observer would be unsafe and undesirable. Hundreds of facts are established between litigants upon evidence less satisfactory and conclusive. In judicial proceedings it is often necessary and proper to establish what a party would have done under certain facts in fixing the liability of another. Suppose A., as the agent of B., is stationed in Iowa to purchase and forward horses to B. in New York, to. be sold on the market, and his instructions are to forward the purchases of each week on the Monday following. After several weeks he neglects to forward as directed, for a particular week, and before the horses are received there is a decline in the market, and a loss of five hundred dollars. Must B. lose the five hundred dollars because it could not be shown that he would have sold the horses

if they had been forwarded? If it should appear in evidence that he had from week to week been selling under the same circumstances, and he should testify that if the horses had been there he would have sold them, would not the testimony justify a finding of the fact?

The most numerous, and, we may say, notable, cases of this character grow out of the failure of telegraph companies to deliver dispatches, and damages are asked because of the failure to deliver, and the loss to the plaintiff has resulted from a failure to sell in the market; and in such cases the question is directly involved, if the party would have sold. The case of *Parks v. Telegraph Co.*, 13 Cal. 423, is directly in point; and upon this precise question the court said: "To ascertain the damages sustained by the breach of this contract these inquiries are pertinent. If the message had been sent, was the plaintiff's agent in Stockton at the time? And would he have received it? Next, would he have then taken out an attachment on the debt? At what time could he have done this? Could he have given security? Could he have procured attorneys to issue the writ? At what hour could and would it have been put in the hands of the sheriff? Was property there of the debtor's subject to the writ? If a telegraphic dispatch had reached the agent at eight o'clock on the seventh, the agent would have been bound to act at once. It is to be presumed that he would have done so. At least he can testify whether he would." *U. S. Telegraph Co. v. Wenger*, 55 Pa. St. 262, involves precisely the same principle. It was a question what the party would have done. Wenger purchased stock at an enhanced price, because of a failure to deliver a message, and the case presented the query what he would have done if the message had been delivered. The inquiry was held proper, and a recovery had. The books abound with cases where the principle or rule is recognized, though not questioned, which shows its relation to and importance in the business affairs of the country. In this connection, see the

following cases: *Manville v. Telegraph Co.*, 37 Iowa, 214; *Thompson v. Telegraph Co.*, 64 Wis. 531; 25 N. W. Rep. 289; *Rittenhouse v. Telegraph Line*, 44 N. Y. 263; *True v. Telegraph Co.*, 60 Me. 26.

In the record are set out some eleven questions, or questions and answers, on which rulings were had and exceptions taken, and directed to the establishment of the fact in question, but the arguments have been directed to the general proposition above discussed, and not to the particular assignments, and hence we think it not important to notice them severally; the several rulings having likely been made under the court's view of the one proposition of law. We think the fact sought to be established is a material one in the case, and reasonably susceptible of proof, and that in excluding the testimony for that purpose, and instructing the jury to return a verdict for the defendant, the district court erred. REVERSED.