HAWKEYE CASUALTY CO. *v.* FRISBEE.

1. CONTRACTS—PREVIOUS PAROL CONTRACT MERGES IN WRITTEN CONTRACT.

   A contract cannot rest partly in writing and partly in parol where it is a contract which has been reduced to writing as all previous parol contracts relating to the same matter are merged in written contracts.

2. INSURANCE—AGENT—REPORTING OF RISKS.

   Where an agent, authorized to issue automobile insurance policies, is charged with duty of promptly reporting risks taken,

---

Agent's duty to give information to principal, 2 Restatement, Agency, § 381.

but neglects to do so, and insurer does not know of the risk
until after liability has been incurred thereunder, it is com-
petent for insurer to show it would have canceled the policy
had it been notified of the risk and if the agent is negligent
in reporting, the insurer may recover his damages from the
agent.

3. SAME—PRINCIPAL AND AGENT.

Insurance agents, with respect to their duties and liability to
their principal for failure properly to perform the same, stand
in the same position as do ordinary agents toward their prin-
cipals.

4. SAME—LIABILITY OF AGENT TO INSURER.

An insurance agent is liable for damages resulting to his prin-
cipal from failure to disclose knowledge of material facts pos-
sessed by him relating to matters in his charge, and which it is
important the principal should know in order properly to safe-
guard its rights.

5. EVIDENCE—JUDICIAL NOTICE—RECORDS.

The Supreme Court will take judicial notice of its own records
in another case to supply an alleged defect in present record
where the defect consisted of the omission of a policy of in-
surance, the existence of which was not a question of fact.

6. INSURANCE—BREACH OF AGENT'S DUTY TO REPORT ISSUANCE OF
POLICY.

In action by insurer under automobile insurance policy against
agent who issued the policy and failed to notify insurer of
such fact until six weeks later and after insured who had a
bad accident record, had had another accident, evidence clearly
preponderated that agent was guilty of breach of agency con-
tract in purposely or negligently concealing from plaintiff
knowledge of circumstances he was duty bound to impart to
insurer which, as a result thereof, was deprived of right to
cancel policy and suffered loss.

7. SAME—DAMAGES—INTEREST.

In insurer's action against its agent for breach of his agency
contract, which resulted in payment for loss under automobile
insurance policy insurer would have canceled because of in-
sured's frequent accident experience had it had timely notice
of issuance of policy, interest is allowed at 5 per cent. from
date insurer had made its payment.

Appeal from Wayne; Brennan (John V.), J. Sub-
mitted October 10, 1946. (Docket No. 47, Calendar

No. 43,332.)   Decided January 6, 1947.   Rehearing denied March 3, 1947.

Assumpsit by Hawkeye Casualty Company, assignee of United Automobile Insurance Company, of Grand Rapids, Michigan, against Dorr W. Frisbee for damages arising from violation of agency contract. Judgment for defendant. Plaintiff appeals. Reversed and remanded for entry of judgment for plaintiff.

*Harold S. Knight,* for plaintiff.

*J. Cyril Willans,* for defendant.

BOYLES, J.   This is a suit in assumpsit brought by the Hawkeye Casualty Company, as assignee of the United Automobile Insurance Company, of Grand Rapids, Michigan, against Dorr W. Frisbee, its general agent, to recover the amount paid by plaintiff to one G. Floyd Bradley and his attorneys, to satisfy a judgment against one Dr. Holcomb, the insured, on a policy of automobile insurance issued in the Grand Rapids company by the defendant as its agent. The essence of plaintiff's claim to recover this amount from Frisbee is that Frisbee failed to send to the company the "daily report" required by his agency contract, showing the issuance of the Dr. Holcomb policy, until after Dr. Holcomb had been involved in an automobile accident resulting in fastening liability on the company. The case was heard without a jury, by the circuit judge who held that the defendant was not liable and entered judgment accordingly, from which the plaintiff appeals.

Hawkeye Casualty Company, the plaintiff herein acquired the assets and assumed the liabilities of the

United Automobile Insurance Company, of Grand
Rapids, Michigan, in February, 1939. The transactions which gave rise to the litigation in the instant
case occurred between the United Automobile Insurance Company, of Grand Rapids, hereinafter
referred to as the Grand Rapids company, and
Dorr W. Frisbee, the defendant herein. No question involving the legality of the transfer from the
Grand Rapids company to plaintiff Hawkeye Casualty Company has been raised.

At the time the transactions here involved were
taking place, Frisbee had been engaged in the insurance business in Detroit for upwards of 15 years
and was operating a large agency. In the latter
part of March, 1938, the president of the Grand
Rapids company went to Frisbee's office in Detroit,
and as the result of their conference an oral arrangement was entered into whereby Frisbee became the general agent of the company in Wayne
county. Frisbee agreed to represent the company,
solicit and write automobile insurance business and
issue policies. It is disputed whether anything was
said on that occasion about the sending of a daily
report to the company. Frisbee started to write
automobile insurance for the Grand Rapids company, and prior to April 9th had issued five policies.
One of them was the policy which gives rise to this
litigation, issued by Frisbee on April 2, 1938, to
Dr. Clayton E. Holcomb and Helen E. Holcomb, effective on that date. These five policies were the
only ones ever issued by Frisbee for the company.
Under date of April 9th a written agency contract
was entered into between the Grand Rapids company and Frisbee. The material part of this contract, in so far as it applies to the issue before us,
is as follows:

"7. Party of the second part (Frisbee) agrees to forward immediately to party of the first part all applications for' insurance secured or copies of dailies or policies written."

Prior to April 2d, the day on which Frisbee issued the automobile policy in question to Dr. Holcomb, one of Frisbee's solicitors, a Mr. Hambly, had written an automobile insurance policy for Dr. Holcomb which, however, was not written through the Frisbee agency. It was placed with the Citizens Mutual Automobile Insurance Company, through another agency represented by Mr. Hambly. Mr. Hambly had taken over the business of another agency when it was closed out, while he also had a very substantial volume of business through the Frisbee agency. The Frisbee agency at that time also wrote policies in the Citizens Mutual, for which company Frisbee had also been an agent for a number of years. Dr. Holcomb's policy in the Citizens Mutual had been canceled by that company prior to April 2d, for accident frequency. This fact was known to Mr. Frisbee as well as to his said solicitor, Mr. Hambly.

Prior to April 2d and as early as March 18th the Grand Rapids company had information in its files to the effect that Dr. Clayton E. Holcomb was an undesirable risk. On March 18th the Grand Rapids company had received notice from its Underwriters Service Association that Dr. Holcomb had had automobile insurance coverage canceled by two other automobile insurance companies, the "Ohio Cas" and "Wolverine Mut," for accident frequency. Also prior to April 2d Mr. Hambly, the solicitor for Frisbee who wrote the policy here under consideration, had renewed a policy for Dr. Holcomb in the Citizens Mutual, which he knew had been canceled by the Citizens Mutual on account of Hol-

comb's accident frequency record. All this was known to Mr. Hambly when he discussed Holcomb's automobile insurance matters with Frisbee. Frisbee admits that he knew of Dr. Holcomb's unsatisfactory accident record, but nevertheless concluded to write the policy here involved, in the Grand Rapids company. Frisbee testified:

"Dr. Holcomb's business was discussed with me prior to the date of this daily, April 2d. In this discussion I determined whether or not it was business that should be accepted. I had a long discussion with the solicitor and Mr. Hambly prior to the acceptance of that business. * * * Morton D. Hambly had been a solicitor of ours for quite some period of time before this transaction. In the course of his business he acquired the Proctor Agency that I have spoken about, but took over that business directly, writing it directly through the Citizens' Mutual Insurance Company. But he continued, in spite of the acquisition of that business to write through our agency. He came to see me with Dr. Clayton E. Holcomb's insurance policy before I placed it with the United Automobile Insurance Company and told me that the Citizens' Mutual of Howell either had cancelled or were about to cancel. He came to my office and discussed with me the acceptance of the Dr. Holcomb risk.

"I was going to put it in the United Automobile from the very beginning if I wrote it. If we accepted it we would have put it with the United Automobile."

The Citizens Mutual Automobile Insurance Company had canceled the Holcomb coverage on March 16th, "because of the assured's frequent accidents." Seven accident claims had been presented, two of which were pending on that date. Frisbee admits that he knew of such cancellation when he wrote the Holcomb policy on April 2d. In explanation, he testified:

"I assume as other companies do that the United would make the usual investigation on the credit report method."

It is not clear how Frisbee could "assume" that the Grand Rapids company "would make the usual investigation on the credit report method" in regard to the Holcomb risk, without having been advised that he, Frisbee, had written a policy in that company. Frisbee failed to give this information to the company until May 14th, the next day after liability had been incurred on the policy. His only excuse for such delay was that it was due to confusion and pressure of business in his office. Frisbee testified:

"I don't think they would have had any way of knowing that we wrote any policies specifically until they received the daily, unless we discussed the risk with them."

Admittedly Frisbee did not notify the Grand Rapids company of the issuance of the Holcomb policy by him or discuss it with the company until May 14th, the day after Dr. Holcomb had been involved in a serious automobile accident.

As hereinbefore stated, the written agency contract entered into between the Grand Rapids company and Frisbee on April 9th required Frisbee to forward immediately to the company "all applications for insurance secured or copies of dailies or policies written." A part of the daily report which his agency contract required Frisbee to furnish the company but which was not furnished until May 14th, was:

"No company has cancelled or declined to issue any automobile insurance for the named assured during the past three years except as follows ————
————————————————."

If the Grand Rapids company had been "immediately" advised of the issuance of the Holcomb policy on April 2d, or immediately after April 9th, or advised of the facts and circumstances known by its general agent Frisbee when he issued this policy, the company would have had ample opportunity to cancel the risk at least before May 13th.   On that day Dr. Holcomb, driving the insured automobile, became involved in an accident as a result of which one Bradley, in May, 1941, obtained a judgment against Dr. Holcomb and Helen Holcomb in the United States district court in Detroit, for $5,000. In the meantime, shortly after the accident on May 13th, the Grand Rapids company had filed a bill in chancery against the Holcombs in the superior court of Grand Rapids, seeking cancellation of the policy issued April 2d by the Frisbee agency, on the ground of fraud, misrepresentation and concealment of material facts, by the Holcombs.   In that case the judge found that the Frisbee agency had authority to issue the policy, that it had knowledge of the facts and circumstances, which knowledge was chargeable to the insurance company in so far as the Holcombs were concerned, and that there had been no concealment, misrepresentation or fraud perpetrated on the company by the Holcombs.   The decree of the lower court denying cancellation was affirmed by this Court on appeal. *Hawkeye Casualty Co.* v. *Holcomb,* 302 Mich. 591. Thereupon the plaintiff herein paid Bradley the amount of the judgment and costs, and brought the instant suit to recover from Frisbee the sums so paid.   For a more complete narration of facts and circumstances, we refer to the opinion and record in the above case.

The oral agreement entered into between the Grand Rapids company and Frisbee during the

latter part of March, 1938, was merged in the written general agency agreement dated April 9, 1938. This contract cannot rest partly in writing and partly in parol; the contract having been reduced to writing, as the previous parol contract relating to the same matter was merged in the written contract. *Savercool* v. *Farwell*, 17 Mich. 308; *M. Rumely & Co.* v. *Emmons*, 85 Mich. 511; *James Leffel & Co.* v. *Piatt*, 126 Mich. 443; *Wenzel* v. *Kieruj*, 168 Mich. 92; *Danto* v. *Charles C. Robbins, Inc.*, 250 Mich. 419.

Where an agent, authorized to issue policies, is charged with the duty of promptly reporting risks taken, but neglects to do so, and the insurer does not know of the risk until after liability has been incurred on the policy, it is competent for the insurer to show that it would have canceled the policy if it had been notified of the risk, and if such negligence of the agent is shown the insurer may recover his damages from the agent. *State Ins. Co.* v. *Jamison*, 79 Iowa, 245 (44 N. W. 371); *Continental Ins. Co.* v. *Clark & Cressler*, 126 Iowa, 274 (100 N. W. 524).

"Insurance agents, with respect to their duties and liability to their principal for failure properly to perform the same, stand in the same position as do ordinary agents toward their principals. * * * An insurance agent is liable for damages resulting to his principal from failure to disclose knowledge of material facts possessed by him relating to matters in his charge, and which it is important the principal should know in order properly to safeguard its rights." 3 Couch, Cyclopedia of Insurance Law, pp. 1817, 1818.

Appellee argues that plaintiff cannot rely on a claim that the company had the right to cancel the policy inasmuch as it was not produced in court. The question was not raised below. The Holcomb

policy is in the printed record in this Court, in *Hawkeye Casualty Co.* v. *Holcomb, supra.* Admittedly there was only one such policy, which is the policy issued by Frisbee to Clayton E. Holcomb and Helen E. Holcomb, April 2, 1938. This Court will take judicial notice of its own records in the chancery case, *supra,* to supply the alleged defects in the present record. *Culver* v. *Fidelity & Deposit Co. of Maryland,* 149 Mich. 630. However, it should be pointed out that in the instant case there is no question of fact but that the Holcomb policy referred to in the chancery case, *supra,* is the identical policy involved here. Nor is there any issue as to whether the insurer had the right of cancellation, under said policy. This clearly distinguishes the instant case from those decisions where the court questioned its right to take judicial notice of facts which were in issue, and which the plaintiff was required to establish by affirmative evidence. For example, see *Carter* v. *Marvel Carburetor Co.,* 269 Mich. 21. The rule applying to the present situation is stated in 9 Wigmore on Evidence (3d Ed.), § 2579, as follows:

"However, for reasons of convenience, where controversy is unlikely and the expense of a copy would be disproportionate, courts are often found taking notice of the tenor or effect of some part of a judicial proceeding, without requiring formal evidence. Since this dispensation is not obligatory on the part of the court, and since it must depend more or less on the practical notoriety and certainty of the fact under the circumstances of each case, little uniformity can be seen in the instances. It is often done for a part of the record in the *same proceeding,* or in a *prior stage of the same controversy.*"

The Holcomb policy contained the following provision:

"This policy may be canceled at any time by the company by giving to the assured five days written notice of such cancellation."

Frisbee's agency agreement in plain language required him to send the company immediately a daily report of all policies issued against it as insurer. If Frisbee had done so the company would have canceled the policy. According to undisputed testimony of the secretary of the company, with the information the company had as to Dr. Holcomb's accident frequency record and previous cancellations it would have immediately canceled the policy. The defendant in this case was an attorney, with many years' experience in insurance agency matters, and admits having knowledge of the usual custom in the insurance business regarding cancellation of policies where the company has information of an accident frequency record.

The evidence clearly preponderates in favor of the plaintiff, that the defendant was guilty of a breach of his agency contract, that contrary to the express requirements of said contract he purposely or negligently concealed from the company the knowledge of circumstances which his duty as agent for 'the company under said contract required him to impart, that as a result the plaintiff was deprived of the right to cancel the Holcomb policy, and suffered a loss thereby. The amount of plaintiff's damages is not in dispute. The judgment for defendant is set aside and the case remanded for entry of judgment for the plaintiff for $5,471.72, the amount paid by plaintiff to discharge its liability for the Bradley judgment, plus interest at the rate of 5 per cent. per annum from September 28, 1942, the date of such payment, with costs of both courts to plaintiff.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, REID, NORTH, and DETHMERS, JJ., concurred.