*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

BECKMAN HOLDINGS, INC., and MEINKE
CONSTRUCTION, INC.,

UNPUBLISHED
May 21, 2020

Plaintiffs/Counter-Defendants-
Appellees,

v

No. 347543
Gogebic Circuit Court
LC No. 2017-000087-CZ

SUNNYSIDE RESORT CONDOMINIUM
ASSOCIATION, INC.,

Defendant/Counter-Plaintiff-
Appellant.

Before: CAVANAGH, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

In this case arising out a dispute over condominium association assessments, the trial court entered two orders which defendant, Sunnyside Resort Condominium Association, Inc. (SRCA), appeals as of right. First, the trial court denied SRCA's motion for summary disposition. Following a bench trial, the trial court entered a second order finding for plaintiffs, Beckman Holdings, Inc. (BHI), and Meinke Construction, Inc. (MCI), and dismissing SRCA's counterclaim. We affirm.

## I. FACTS & PROCEDURAL HISTORY

Sunnyside Resort Condominiums is a private resort property on Lake Gogebic comprising 12 completed residential units and two vacant units that are jointly owned by plaintiffs. SRCA is the association that manages the condominium project.

The parties are repeat players in this Court. They recently were here in *Sunnyside Resort Condominium Association, Inc v Beckman*, unpublished per curiam opinion of the Court of Appeals, issued April 23, 2019 (Docket No. 341116), which concerned the payment of assessments for plaintiffs' two vacant units. In that case, following a change to SRCA's leadership, SRCA assessed fees on the units owned by BHI and MCI, contrary to the parties' existing agreement. In December 2012, SRCA sued BHI and MCI to recover assessments dating back to their purchase

-1-

of the units in 2006. *Id*. at 2. Following a bench trial, the trial court concluded that the master deed and bylaws required BHI and MCI to pay assessments according to the percentages of value attributed to their units from spring 2012 forward, but not the assessments from before that time because SRCA had not acted with proper authority with regard to those assessments. *Id*. We affirmed that ruling, and remanded the case to the trial court to include the proper assessments in the judgment. *Id.* at 5.

In the summer of 2015, while that appeal was pending, a group of four unit-owners constructed a four-stall garage and a single stall garage on land designated as a general common element. They did this without there being any formal action by SRCA to allow for the garages to be built on the common space. Two members of the group of builders were on SRCA's board of directors, and soon after the instant litigation commenced, SRCA declared that the garages were common space and initiated a process to convert the garages into individual ownership. As a result, BHI and MCI stopped paying the monthly assessment fees for their two units in July 2015.

On April 12, 2017, BHI and MCI filed the instant complaint which alleged that construction of the garages reduced the common element and created five additional units that were not being assessed any fees, while the two vacant lots were assessed at the same rate as other units that had residential structures. BHI and MCI alleged that their purchase of the vacant lots and the construction of the garages constituted a material change to the condominium project that required a recalculation of the percentages of value assigned to each unit in the project. BHI and MCI sought the equitable reformation of the percentage of value assigned to their units pursuant to MCL 559.195.[1] SRCA then counterclaimed for unpaid monthly assessments from July 2015 through June 2018 and sought declaratory relief regarding the garage issue.

SRCA moved for summary disposition pursuant to MCR 2.116(C)(6) (another action, same parties, same claim), MCR 2.116(C)(7) (claim is barred because of prior judgment), MCR 2.116(C)(8) (failure to state a claim), and MCR 2.116(C)(10) (no genuine issue of material fact). SRCA argued that the parties had already litigated the issue of the assessment fees based on the units' vacancy, and that with the exception of the allegations regarding the garages, the complaints in both lawsuits were almost identical. SRCA further argued that plaintiffs' allegations regarding the garages should be dismissed under (C)(8) because SRCA's failure to follow the formalities of obtaining board approval did not result in the addition of new units, and as a matter of law, any

---

[1] MCL 599.195 provides:

> If the condominium subdivision plan is revised subsequent to its initial filing, and the revisions would alter the percentage of value per condominium unit when applied to the formula used to derive the percentage of value, then the percentage of value shall be altered by the developer to reflect the revisions. If the percentage of value is not altered to reflect these revisions, then a co-owner may bring an action or initiate a proceeding to require revisions in the percentage of value per condominium unit, without the consent of the co-owners, mortgagees, or other interested parties, as are determined to be fair, just, and equitable in accordance with the basic formula used to originally establish the percentage of value for the project.

purported transfer of the common elements was void. SRCA also argued that summary disposition was warranted under (C)(10) because full use of the common elements had been restored to all unit owners including plaintiffs. SRCA attached to their motion an affidavit by its president, Thomas Brown, attesting that SRCA had not received any demands from plaintiffs to take any action regarding the garages, and that the garages had been made available for all unit owners.

BHI and MCI argued that discovery had not been completed, and that testimony would show that SRCA's board of directors turned a blind eye to the construction of the garages and converted common space into private garages for the personal use of some of SRCA's board members, which reduced the common element and materially changed the condominium project. Plaintiffs argued that board resolutions showed that individual board members paid for the construction of the garages and that the board refused to amend the appropriate condominium documents and follow statutory formalities to assess and invoice the new units. Plaintiffs argued that the instant claim, seeking equitable reformation under MCL 599.195, was distinct from the prior litigation which concerned the assessments from 2006-2012 brought under a breach of contract claim. In response to the summary disposition motion, plaintiffs attached an affidavit by their trial counsel stating that he believed discovery would substantiate the allegations in the complaint.

The trial court concluded that summary disposition was not warranted under MCR 2.116(C)(6) because the prior litigation was sufficiently distinguishable from the instant action, and because it no longer was "pending." It also concluded that the prior case dealt with a breach of contract action and unpaid assessments, but did not address whether plaintiffs would be entitled to reformation of the value percentages based on the sale of the two vacant units and the construction of the garages. Therefore, the trial court decided, dismissal under MCR 2.116(C)(7) was not warranted. The trial court further concluded that dismissal under MCR 2.116(C)(8) was inappropriate because MCL 559.195 permits condominium owners to challenge the value percentages, and that dismissal under MCR 2.116(C)(10) was inappropriate because there existed factual questions regarding (1) whether the vacant units should pay the same amount as occupied units, and (2) whether plaintiffs were denied access to the garages. If so, the trial court ruled, the length of time they were denied access, and whether the construction of the garages entitled plaintiffs to an equitable revision of the assessment amounts also had to be determined. Accordingly, the trial court denied SRCA's motion for summary disposition.

The case proceeded to a bench trial where Neil J. Beckman, who owned and operated BHI, testified that BHI and MCI purchased units 11 and 13 from the developer Robert Delich for $13,000 per unit in 2006. At that time, units 11, 12, 13, and 14 were vacant lots, and the subdivision had only one well. Since that time, buildings were constructed on units 12 and 14, and a second well was installed. However, units 11 and 13 remained vacant and the only expense associated with those lots was for maintaining the lawn. Utilities were installed on units 11 and 13, but were not hooked up or used. Beckman believed that it was inequitable for units 11 and 13 to be assessed at the same value percentage as units 1-8, which had structures and were purchased for over $100,000 per unit. He thought that units 11 and 13 should pay only 1% of the assessment

fees, rather than 5.8334% set forth in the master deed,[2] based on his approximation of market values and the square footage of all the units. This calculation included percentages for the additional units which were added by the construction of the garages.

Thomas Brown testified that he purchased units 3 and 4 with his wife Jane Brown in 2005, and since that time, parking had been available in the common area. Brown served on SRCA's board of directors from 2008-2017, and was SRCA's president since 2011. In 2014, he coordinated with three other unit owners to build the garages: John O'Hara, Chris Ligocki, and Randy Sims. At that time, the board of directors had four members: Paul Busch, Jane Brown, Thomas Brown, and Chris Ligocki. The four builders did not consult with Busch, who was the only board member not involved with the construction, but they contacted SRCA's corporate counsel. SRCA's counsel informed them by email on May 1, 2014, that before construction could begin, they needed a survey, governmental permits, and had to comply with the process of changing the condominiums' common elements by obtaining the approval of mortgage holders for all of the units and obtaining a supermajority approval of all of the unit owners.[3]

In September 2014, the four builders conducted a survey and divided up the common area into pre-assigned parking places. The square footage of the parking places was proportionate to each unit's value percentage listed in the master deed. That same fall, construction began and the garages were completed by spring 2015. Around the time the garages were completed, SRCA's corporate counsel learned about the construction and informed the builders that the garages belonged to SRCA. Still, SRCA's board did not inform the members that they could use the garages, and the builders retained exclusive use of the garages until spring 2017. They did this without paying any assessments for the garages. It was only after plaintiffs filed their complaint in the instant lawsuit that SRCA took possession of the garages and made them available for use by all of the members.

Chris Ligocki testified that the builders had "put the cart before the horse" by constructing the garages before proper approval was obtained. After the instant lawsuit was filed, SRCA's board adopted a temporary resolution to divide up the common area into assigned parking spaces for all the units according to the plan designed by the engineering company that was hired to

---

[2] Article VI, § B of the master deed discussed "Percentage of Value," noting that "[t]he total value of the project is 100%. The percentages of value for each unit were computed based upon a combination of market value, size, and allocable expenses for maintenance . . . ." Units 1-8 and 11-14 were given a percentage value of 5.8334% each, unit 9 was calculated at 8.3333%, and unit 10 was 21.6659%.

[3] Article VI, § B of the master deed states:

> The method or formula used to determine the percentage of value of units in the project may be changed only with the prior written approval of each holder of a mortgage lien on any unit in the project and with the unanimous consent of all the co-owners expressed in a duly recorded amendment to the master deed.

conduct the initial survey. After trial was concluded, the board decided it would put the resolution to a membership vote if necessary.

The trial court ultimately found in plaintiffs' favor and reformed the percentage of value for units 11 and 13 to 0% each. The trial court rejected SRCA's argument that a revised subdivision plan must be recorded for plaintiffs to obtain equitable relief. The trial court explained that the plain language of the relevant statutes indicated a legislative intent for MCL 559.195 to operate when a subdivision plan changed and the condominium documents did not reflect that change. Additionally, the statute's requirement that the percentage value "be fair, just, and equitable in accordance with the basic formula used to originally establish the percentage value for the project" required the court to apply the basic formula used by the developer, which the trial court determined was based solely on structure size. Because units 11 and 13 were vacant, the proper percentage value for those units was 0% each. However, the trial court noted, that when residential structures were built on those units, the percentage of value "shall be based upon the structure size." The trial court further held that the percentage values for units 11 and 13 would determine the common expenses, and vote values, and interest in the common elements associated with those units.

The trial court found that SRCA's assessments were erroneously calculated because they failed to account for the exclusive use of the garages by the builders which reduced the common element, and failed to account for the fact that units 11 and 13 were not serviced with utilities. The trial court reasoned that given the reformed percentage of value of 0%, the proper calculation of the assessments would likewise be $0. Thus, the trial court held that plaintiffs did not owe SRCA any assessments related to SRCA's counterclaim.

Finally, the trial court found SRCA's request for relief disingenuous in light of the culpability of the builders and their positions on SRCA's board. Accordingly, the trial court denied SRCA's request for declaratory relief regarding the garages, and held that SRCA must follow the law and condominium documents to address the issue.

## II. ANALYSIS

SRCA now appeals and challenges the trial court's denial of SRCA's motion for summary disposition, and the trial court's finding for plaintiffs on the claim and counterclaim. We consider each argument in turn.

## A. SUMMARY DISPOSITION

We review de novo a trial court's decision regarding a motion for summary disposition, reviewing the record as it existed at the time of the trial court's ruling, and the interpretation of court rules. *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 319–20; 900 NW2d 680 (2017); *Dextrom v Wexford Cnty*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

SRCA first challenges the trial court's denial of summary disposition under MCR 2.116(C)(6) which is appropriate where "[a]nother action has been initiated between the same parties involving the same claim." When deciding whether summary disposition is proper under MCR 2.116(C)(6), a court must consider the pleadings, affidavits, depositions, admissions, and

other documentary evidence submitted by the parties. MCR 2.116(G)(5).

As the trial court noted, the prior litigation dealt with a claim for breach of contract and sought a money judgment for the unpaid assessments, but it did not consider whether plaintiffs were entitled to a reformation of the value percentages based on their purchase of vacant units and the construction of the garages. In our previous opinion, we summarized the prior litigation as follows:

> In December of 2012, the SRCA sued [BHI, MCI, and Beckman], asserting one count alleging a violation of the master deed and condominium bylaws by failing to pay assessments, and one count against Beckman individually, arguing that he breached his fiduciary duty to the SRCA and its members when he refused to assess units 11 and 13, in which he had a financial interest, while he served as a board member and president. Defendants responded with a counterclaim, alleging in Count I, that the SRCA had breached its fiduciary duty to the members via the actions of its board members and officers; in Count II, that the SRCA was required to, under the terms of the bylaws, indemnify Beckman for his defense of its breach of fiduciary duty claim; in Count III, that the SRCA owed Beckman for his personal payment to install a well to service units 11-14; and in Count IV, that the SRCA committed slander of title by filing improper liens against units 11 and 13. Defendants also filed a third-party complaint against certain board members and officers of the SRCA, alleging in Count I that the third-party defendants had violated their fiduciary duties to the SRCA and its members, and that, in Count II, Thomas Brown had committed slander of title by signing under oath and recording the improper liens.

> The district court decided to bifurcate the issues for trial, first considering whether the master deed and bylaws required BHI and MCI to pay assessments according to the percentages of value attributed to their units. After a one day bench trial, the district court held that the master deed required units 11 and 13 to pay their share of the assessments, but that the board of directors had improperly attempted to levy an assessment to cure the errors of the past boards of directors not to levy those assessments. Thus, the district court ordered that BHI and MCI were to pay the properly levied assessment from spring of 2012 forward, but not the assessments from before that time. In the judgment ultimately issued by the district court on this issue, BHI and MCI were ordered to pay $5,062.93.

> Around six months later, the district court held a second bench trial, this time to consider Count II of the complaint and all of the issues in the counterclaim and third-party complaint. Following a two-day bench trial and a later hearing on the issue of damages, the district court determined that Beckman could not have breached his fiduciary duty to the SRCA and its members where the vote to approve the budget always was unanimous; the SRCA could not be vicariously liable for the alleged breaches of fiduciary duties of its board members and officers; the SRCA was required to indemnify Beckman under the terms of the bylaws; the SRCA made no agreement to pay for the well installed by Beckman, so did not have the responsibility to pay for it; the SRCA and Thomas Brown erred by filing liens that they knew to be improper, but did not commit slander of title where

-6-

defendants failed to prove they suffered any damages therefrom; and that third-party defendants acted improperly in an array of manners, but had not committed the tort of breach of fiduciary duty, where defendants again failed to prove that they suffered damages. [*Beckman*, unpub op at 2.]

Thus, that case involved the power of SRCA's board to collect assessments, but did not consider the reasonableness of those assessments. Therefore, the prior litigation and the instant action involve different issues. Moreover, in the prior litigation, SRCA sought payment of the outstanding assessments pursuant to MCL 559.208, which permits a cause of action to recover money judgments for unpaid assessments. Here, plaintiffs seek an equitable reformation of the value percentages pursuant to MCL 559.195. Although both provisions are found in the Condominium Act, MCL 599.101, *et. seq.*, they provide two separate and distinct causes of action.

SRCA argues that plaintiffs invoked MCL 559.195 as part of their defense in the prior litigation, and therefore, this issue was already litigated. However, MCL 559.195 did not form the basis for any of the counts listed in the counterclaim of the prior litigation, and to the extent that plaintiffs relied on it in their defense of SRCA's claim, the trial court did not address or resolve the issue in this case. Thus, the prior litigation does not involve "the same claim" at issue in the instant action and summary disposition was not appropriate. MCR 2.116(C)(6).

SRCA next argues that summary disposition was warranted on the basis of either collateral estoppel or res judicata under MCR 2.116(C)(7). We disagree.

When it grants a motion under MCR 2.116(C)(7), a trial court should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party. *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015).

Under the doctrine of res judicata, a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. *Wayne Co v City of Detroit*, 233 Mich App 275, 277; 590 NW2d 619 (1998). The doctrine bars a second, subsequent action when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies. *Verbrugghe v Select Specialty Hosp-Macomb Co, Inc*, 279 Mich App 741, 744; 760 NW2d 583 (2008). Michigan courts apply the doctrine broadly to bar "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004).

SRCA only disputes the third element, and argues that plaintiffs could have raised the reformation issue in the prior litigation, and that their failure to do so precludes them from raising it in the instant lawsuit. When examining factors for the third element of res judicata, Michigan courts employ the broad, pragmatic "same transaction test." *Garrett v Washington*, 314 Mich App 436, 442; 886 NW2d 762 (2016). The transactional test provides that the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief, and whether a factual grouping constitutes a "transaction"

for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, and whether they form a convenient trial unit. *Id.*

Although there are some overlapping facts between the prior litigation and the instant action, they differ in the nature of the proofs and the motivation for the claim. *Id*. at 445. The prior litigation concerned the board's ability to levy assessments and required examination of the portions of the condominium documents and Michigan laws that pertain to the board's powers. Therefore, the evidence in that case focused on the sufficiency of SRCA's budget and SRCA's adherence to the prescribed rules of order. By comparison, the instant action required the trial court to examine the portions of the condominium documents related to the developer's plan, and the evidence related to the comparative square footage, market value, and expenses associated with each unit in the condominium project. Additionally, the prior litigation, filed December 11, 2012, sought recovery of the assessment dating back to 2006, and the instant action concerned the assessments from July 2015 onward. Thus, even limiting the analysis to consider only the issue of the vacant lots, as SRCA would have us do, the facts related to the instant case are sufficiently different from the facts in the prior litigation in "time, space, origin or motivation" to prevent res judicata from barring plaintiffs' claim. *Id.* at 442.

SRCA argues that issue preclusion bars the portion of plaintiffs' claim related to the vacancy of units 11 and 13, and that the trial court committed error requiring reversal when it applied the res judicata "transaction test" to SRCA's argument related to issue preclusion. We disagree.

The doctrine of issue preclusion, also called collateral estoppel, "precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 528-529; 866 NW2d 817 (2014). "Generally, application of collateral estoppel requires (1) that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) that the same parties had a full and fair opportunity to litigate the issue, and (3) mutuality of estoppel." *Id*. at 529. Under the first element, the ultimate issue must be identical to the issue involved in the first action, not merely similar. *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 340; 657 NW2d 759 (2002).

SRCA argues that both cases sought to resolve the same factual issue regarding the propriety of the assessments for units 11 and 13. However, as discussed *supra*, the issue in the prior case concerned the power of the board to impose assessments, and the instant case involves the proper amount of those assessments. These are not identical issues. *Id.* Therefore, this argument fails.

SRCA also argues that, under the compulsory joinder rule, MCR 2.203(A), plaintiffs' claim for equitable relief in this action is barred because it was not joined in the prior action. However, for the same reasons that res judicata does not bar plaintiffs' claim, neither does MCR 2.203(A). *Garrett*, 314 Mich App at 451 (res judicata principles are applied in determining whether two claims arise out of the same transaction or occurrence for purposes of MCR 2.203(A)).

SRCA next argues that summary disposition under MCR 2.116(C)(8) was warranted with respect to plaintiffs' allegations regarding the construction of the garages because any improvements made on real estate belong to the owner of the underlying real estate, and the common elements could not be reduced by the construction of the garages as a matter of law. We disagree.

A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the pleadings alone. *Lawrence v Burdi*, 314 Mich App 203, 211; 886 NW2d 748 (2016). When deciding a motion under (C)(8), we accept all well-pleaded factual allegations as true, construing them in the light most favorable to the nonmoving party, and the motion is properly granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Dalley v Dykema Gossett*, 287 Mich App 296, 304–05; 788 NW2d 679 (2010).

In their complaint, plaintiffs alleged that when the master deed was recorded in 2004, the condominium project consisted of 10 existing residential units. Units 1-8 had cottages with a fair market value of $129,900-$159,900. Unit 9 had a home with a heated garage valued at $229,900. Unit 10 had a home with a five-tier, cedar deck and was valued at $349,900. The developer initially intended to build identical structures on each of the four vacant lots that were units 11-14, but in 2005, he updated the condominium plan to allow units 11-14 to be sold as vacant lots. In 2006, plaintiffs purchased the vacant units and the terms of sale specified that assessments would not be levied against the vacant lots until structures were constructed on them. Nonetheless, units 11 and 13, which remained vacant, were assessed at the same value percentage as units 1-8, even though units 11 and 13 were valued at $13,000 per unit and did not have utilities, septic systems, wells, or structures. Additionally, in 2005 two garages were constructed on property that was designated as a common element, effectively creating units 15-19. SRCA turned a blind eye to the construction and did not comply with the formalities required to convert common element property into property for personal use. Despite these deviations from the subdivision plan, SRCA refused to recalculate the value percentages, which produced the inequitable result of units 11 and 13 being assessed the same value percentage as units 1-8, while units 15-19 were not assessed at all and the common element was reduced. Accordingly, plaintiffs alleged, a recalculation of the value percentages was necessary under MCL 559.195. The complaint was sufficient to maintain a claim pursuant to MCL 559.195.

SRCA argues that under Michigan law, the construction of the garages on land designated as a common element was insufficient to appropriate the property for personal use, and plaintiffs were not denied access to the garages. However, MCL 559.195 does not require that plaintiffs plead, or prove, a claim of conversion. Rather, plaintiffs were only required to plead that there had been a revision after the subdivision plan's initial filing that altered the value percentages under the original formula. Plaintiffs alleged two such revisions: the sale of vacant lots, and the construction of the garages. Accepting these allegations as true, and construing them in the light most favorable to plaintiffs, the trial court properly denied SRCA's motion summary disposition pursuant to MCR 2.116(C)(8). *Dalley*, 287 Mich App at 304–05.

SRCA next argues that summary disposition was warranted under MCR 2.116(C)(10) because SRCA's board of directors made the garages available to all unit owners, and therefore,

plaintiffs were not denied access to the garages. We disagree.

A summary disposition motion filed under MCR 2.116(C)(10) "tests the factual adequacy of a complaint on the basis of the entire record, including affidavits, depositions, admissions, or other documentary evidence." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). Summary disposition may be granted under MCR 2.116(C)(10) when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 408; 864 NW2d 591 (2014). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. *Gorman*, 302 Mich App at 116.

"The moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence." *McCoig Materials, LLC v Galui Construction Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). The burden is then shifted to the nonmoving party to demonstrate that a genuine issue of material fact exists. *Id.* The existence of a disputed fact must be established by substantively admissible evidence, although the evidence need not be in admissible form. MCR 2.116(G)(6); *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 441; 814 NW2d 670 (2012). If the nonmoving party fails to establish the existence of a material factual dispute, the moving party's motion is properly granted. *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001). Finally, while summary disposition is usually not appropriate before the completion of discovery, it may be granted if there is not a fair chance that further discovery would uncover factual support for the claim. *Kelly-Nevils v Detroit Receiving Hosp*, 207 Mich App 410, 421; 526 NW2d 15 (1994).

In support of its motion, SRCA attached an affidavit by Thomas Brown attesting that the SRCA's board had taken physical control of the garages and made their interiors available to all unit owners after plaintiffs filed the instant complaint. In response, plaintiffs submitted an affidavit by trial counsel indicating that discovery would prove the facts alleged in the complaint. Generally, evidence that is purely speculative or conjecture runs afoul of MRE 702, and is insufficient to create a genuine issue of material fact. *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 84; 684 NW2d 296 (2004). However, because discovery had not been completed, and because there was a fair chance that further discovery would uncover factual support for plaintiffs' claim, the trial court did not commit error requiring reversal when it denied SRCA's motion for summary disposition pursuant to MCR 2.116(C)(10).

Thus, the trial court did not commit error requiring reversal when it denied SRCA's motion for summary disposition.

B. JUDGMENT FOR PLAINTIFFS

SRCA challenges the trial court's judgment in favor of plaintiffs and raises a number of alleged errors. We find no errors that require reversal.

We review a trial court's findings of fact in a bench trial for clear error. *Chelsea Inv Group LLC v Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). A finding is clearly erroneous if there is no evidentiary support for it or if we are left with a definite and firm conviction that a

mistake has been made. *Hill v City of Warren*, 276 Mich App 299, 308, 740 NW2d 706 (2007). The trial court's findings are given great deference because it is in a better position to examine the facts. *Id.* We review de novo a trial court's determination regarding equitable relief, questions of statutory interpretation, and a trial court's conclusions of law. *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 33 n 12; 896 NW2d 39 (2016); *Pres The Dunes, Inc v Dept of Envtl Quality*, 471 Mich 508, 513; 684 NW2d 847 (2004); *Chelsea*, 288 Mich App at 250.

SRCA argues that the trial court erred when it concluded that the original formula used by the developer to assign value percentages was based on the size of each units' structure, and should instead have been based on the square feet of ground space. We disagree.

Article VI, § B of the master deed sets forth the formula used for calculating the percentage values:

> The percentages of value for each unit were computed based upon a combination of market value, size, and allocable expenses for maintenance:

> The result percentages are reasonably adjusted to total 100%. The respective units have been assigned percentages of value based upon fourteen (14) units.

SRCA argues that "size" must be interpreted to mean square ground footage pursuant to MCL 559.110(3). However, that provision provides:

> "Size" means the number of cubic feet, or the number of square feet of ground **or floor space**, within each condominium unit as computed by reference to the condominium subdivision plan and rounded off to a whole number. Certain spaces within the condominium units including, without limitation, attic, basement, and garage space may be omitted from the calculation or partially discounted by the use of a ratio, if the same basis of calculation is employed for all condominium units in the condominium project, that basis is used for each condominium unit in the condominium project, and that basis is disclosed in appropriate condominium documents furnished to each co-owner. [Emphasis added.]

Thus, SRCA ignores the plain language of the statutory definition that it relies on. Because units 11 and 13 lack structures, and therefore lack "floor space," the trial court's interpretation and application of the formula described in the master deed does not conflict with the definition of "size" provided in MCL 559.110(3), and SRCA's argument fails.

SRCA next argues that the trial court ignored the statutory definitions of "condominium subdivision plan" which requires that revisions to the project follow the procedures set forth in MCL 559.190-191, and the trial court failed to explain how the continued vacancy of units 11 and 13 constituted a "revision" to the plan. We disagree.

MCL 559.195 provides a cause of action where the subdivision plan has been revised, whereas §§ 190-191 lay out the process for amending the condominium documents, considered to be the master deed and its attachments, § 103(3)(10), of which the subdivision plan is included. "Condominium subdivision plan" is a more specific term than "condominium documents," and

therefore MCL 559.195 controls over §§ 190-191. *Telford v State*, 327 Mich App 195, 199; 933 NW2d 347, 349 (2019) (a more specific statutory provision controls over a more general statutory provision). The Condominium Act, MCL 599.101, *et. seq.*, does not define the term "revise" and the trial court correctly assigned the term its ordinary meaning by consulting the dictionary definition. *Diallo v LaRochelle*, 310 Mich App 411, 417-418; 871 NW2d 724 (2015). Moreover, § 195 does not require a revision to the subdivision plan first be recorded before a co-owner may seek equitable relief, and we cannot read such a requirement into the statute. *Pike v N Michigan Univ*, 327 Mich App 683, 697; 935 NW2d 86 (we must not judicially legislate by adding into a statute provisions that the Legislature did not include).

Nor did trial court err in finding that a "revision" occurred in this case. Art IV of the master deed states that each unit was intended for "residential purposes" and attachments to the master deed depict structures on the vacant units 11 and 13 which are not labelled "need to be built" or "need not be built" as required by MCL 559.166(2)(j). The disclosure statement states that the project consists of 10 existing units and four "to be built" units, that the construction of the four unfinished units had commenced in June 2004, and that items which were not labeled had already been constructed. The disclosure statement further indicated that the budget and assessments for fiscal year 2005 assumed that the 14 units had been sold and occupied, and that the developer would be allowed to pay a reduced share of assessments for any unfinished units. Finally, the disclosure statement indicates that units 11-14 were "newly constructed" and were serviced by their own common well. However, Beckman testified that when the developer sold those units, they contained no structures and there was no well service. Given these facts, the trial court did not err when it concluded that the developer had deviated from his original plan when he sold units 11-14 as vacant lots. Moreover, the trial court did not rely solely on the vacancy of the units, but also considered the construction of the garages, which do not appear in the master deed or its attachments.

SRCA next argues that the trial court improperly admitted as evidence a spreadsheet of Beckman's preferred calculations of value percentages as a function of each unit's market value and floor space. Beckman's spreadsheet was relevant to plaintiffs' equitable claim, cumulative of his testimony about the fair allocation of value percentages in his opinion, and not unduly weighed by the trial court in light of its own calculations. Thus, the trial court did not abuse its discretion by allowing the admission of the spreadsheet. *Taylor v Mobley*, 279 Mich App 309, 315; 760 NW2d 234 (2008) (a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion).

SRCA also challenges the trial court's decision to admit the corrected deeds for units 11 and 13 into evidence because the parties' agreement contained in the deed regarding the assessments for the units already had been litigated, and was therefore barred by issue preclusion. However, the reasons stated above, SRCA's arguments of issue preclusion fail.

SRCA next argues that plaintiffs were required pursuant to MCL 450.2493a to make a prelitigation demand for SRCA to terminate the exclusive use of the interior of the garages by the builders, and the failure to do so should have should have resulted in dismissal of the claim. MCL 450.2493a governs the preconditions for a shareholder, member, or director to bring a derivative suit against a nonprofit corporation. Generally, "a suit to enforce corporate rights or to redress or

prevent injury to the corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation and not that of a stockholder, officer or employee." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 474; 666 NW2d 271 (2003). Here, plaintiffs alleged cause of action arises from a matter of equity, not a contract or tort, and plaintiffs alleged a direct harm caused by SRCA's failure to recalculate the value percentages based on the builders' construction of the garages. *Michigan Nat'l Bank v Mudgett*, 178 Mich App 677, 680; 444 NW2d 534 (1989) (a suit is not derivative in nature when plaintiffs have demonstrated that they sustained a loss separate and distinct from that of other shareholders generally, or have they shown a violation of a duty owed directly to them and not to the corporation generally). Thus, MCL 450.2493a is inapplicable here.

SRCA next argues that the trial court erred when it refused to take judicial notice of the prior litigation or receive into evidence the record from that case. We disagree.

A court may take judicial notice of its own records to supply the alleged defects that exist in the current record. *Hawkeye Casualty Co v Frisbee*, 316 Mich 540, 549; 25 NW 2d 521 (1947). "[A] circuit judge may take judicial notice of the files and records of the court in which he sits." *Knowlton v City of Port Huron*, 355 Mich 448, 452; 94 NW2d 824, 826 (1959). Taking judicial notice is discretionary. MRE 201(c). The same judge of the Gogebic circuit court presided over both the prior litigation and the instant case. Given the volume of the prior litigation, and the trial court's familiarity with the issue raised in both cases, we cannot conclude that the trial court abused its discretion when it denied SRCA's request to take judicial notice of the entire record in the prior litigation.

SRCA next argues that the trial court erred by permitting plaintiffs to maintain their action without joining the other unit owners as necessary parties. Again, we disagree. MCR 2.205(A) requires joinder as parties all "persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief." Under the master deed, SRCA was vested with the responsibility of administering, operating, managing, and maintaining the condominium project which included the common elements. In a case such as this, the association of co-owners is the proper party to assert ownership in the common elements of the condominium project. See MCL 559.160 (providing that "[a]ctions on behalf of and against the co-owners shall be brought in the name of the association of co-owners" and that "[t]he association of co-owners may assert, defend, or settle claims on behalf of all co-owners in connection with the common elements of the condominium project").

SRCA next argues that the trial court's ruling creates ambiguity for the future management of the condominium project because it allows units 11 and 13 to be assessed based on the size of the residential structures. We disagree once more. The trial court merely limited its finding to the facts that were presented. The trial court's determination of the value percentages for units 11 and 13 at 0% was based on their vacancy—a condition which is subject to change. Equity allows complete justice to be done in a case by adapting its judgments to the special circumstances of the case. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 411; 919 NW2d 20 (2018). Accordingly, the trial court did not err when it limited equitable relief to the specific facts and conditions presented.

Finally, SRCA argues that the trial court's reformed valuation percentages should only

apply to prospective assessments, and not to its counterclaim for unpaid assessments from 2015 through trial. However, the trial court correctly concluded that SRCA's assessments were based on an improper calculation that failed to account for the fact that units 11 and 13 incurred no utility costs and that the common element had been reduced by builders' construction and the exclusive use of the garages. Thus, this argument fails, and SRCA has not demonstrated that it is entitled to relief.

## III.  CONCLUSION

The trial court did not commit error requiring reversal when it denied SRCA's motion for summary disposition, and SCRA's challenges to the trial court's judgment in favor of plaintiffs are without merit. Accordingly, we affirm.

/s/ Mark J. Cavanagh
/s/ David H. Sawyer
/s/ Michael J. Riordan

-14-